## Shaftic, Appellant, v. Com. C. & C. Co. et al.

Argued April 19, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Peter P. Jurchak,* for appellant, cited: Lubanski v. Delaware, Lackawanna & W. R. R. Co., 81 Pa. Superior Ct. 538; McGilley v. Markovitz Bros., 89 Pa. Superior Ct. 170; Lovasz v. Carnegie Steel Co., 266 Pa. 84.

*Harry J. Nesbit,* and with him *Greer and Greer,* for appellee, cited: Nupp v. Estep Bros. Coal Mining Co., 272 Pa. 159.

OPINION BY CUNNINGHAM, J., July 14, 1932:

The disposition of this appeal involves the construction and application of the commutation provisions of our Workmen's Compensation Law. Using general terms, we may thus state the question involved: An injured employe had an award of compensation at a specified weekly rate for a definite period; he died before half of the period had elapsed, leaving a dependent widow and children; during his lifetime he received appropriate weekly payments and, in addition thereto, more than half of the amount of his original weekly payment was commuted, by orders of the board, for the respective remainders of the period and the present worth thereof paid to him, so that the amount paid to him in his lifetime exceeded materially the amount he would have received if there had been no commutations; under such circumstances, should the weekly payments to which his dependents became entitled following his death be reduced to the extent of the commutations?

The facts out of which this question of law arose are not controverted. Through prior litigation, with which we are not now concerned, it was judicially determined that Commonwealth Coal and Coke Company and its insurance carrier, defendants herein, were liable to John Shaftic, husband of Julia Shaftic, the present claimant and appellant, for compensation, under paragraph (c) of Sec. 306, for the definite period of four hundred weeks, at the rate of $12 per week. See Shaftic v. Commonwealth Coal and Coke Company, 293 Pa. 82. Shaftic died before the expiration of the four hundred weeks' period leaving dependents—his widow, Julia Shaftic, a daughter who will reach the age of

sixteen on June 15, 1933, and a son who will be sixteen on April 11, 1935. During his lifetime the board, at his instance, ordered commutations of parts of his compensation payments, as hereinafter detailed; in making an award to the dependents, the referee and board refused to allow the employer the credit claimed on account of these commutations; the court below reversed, ordered an amended award and entered judgment thereon; the widow now appeals from that judgment.

The issue may be defined by a statement of these material facts: Shaftic was seriously injured while firing a shot in a coal mine on December 6, 1926; his compensation payments began December 16th, and the four hundred weeks' period would have ended August 16, 1934. He died May 20, 1930—178 5/7 weeks after compensation began and 221 2/7 weeks before the period would have ended. For some reason, not appearing in the record, the insurance carrier continued payments until June 12, 1930, (resulting in an overpayment of $7.72) which accounts for several slight variations in subsequent calculations. For the first eighty-nine weeks of the period he was paid at the rate of $12 per week, a total of $1,068.

On August 30, 1928, when the period still had three hundred and eleven weeks to run, the board, upon petition of the employe, ordered commutation of a part of his weekly payments ($5.95 out of the $12), for the unexpired period of three hundred and eleven weeks; the present worth under the commutation, $1,-604.17, was paid to enable Shaftic to satisfy a mortgage of $1,400 upon his property, buy a cow and pay grocery bills. The terminal value of this portion of the compensation, if the commutation had not been made, would have been $1,850.45. From the date of this commutation the weekly rate was reduced thereby to $6.05, and he was paid at that rate for the ensuing six weeks or until October 10, 1928, a total of $36.30.

At that time the board, in order to provide for the payment of an attorney fee of $350, authorized the application thereto of $2 per week for one hundred and seventy-five weeks—October 11, 1928, to February 18, 1932; at the request of the attorney this sum was commuted and its present worth, $322.62, paid, reducing the weekly payments to $4.05. For the next thirty-six weeks—October 11, 1928, to June 19, 1929,—the employe was paid at the rate of $4.05 per week, a total of $145.80.

On June 17, 1929, the board ordered another commutation of $1.70 out of the weekly rate then payable for the remainder of the four hundred weeks' period— two hundred and sixty-nine weeks—for the purpose of enabling the employe to pay creditors then threatening execution against his real estate; he was paid the present worth, $403.96, which had a terminal value of $457.30, and the weekly rate was thereby reduced to $2.35. For the next fifty-one weeks, (until June 11, 1930), payments were made at the rate of $2.35 per week, aggregating $119.85.

Summarizing the payments to Shaftic during his lifetime, we find he was paid weekly payments, at the various rates above mentioned, in the aggregate amount of $1,369.95, and received as the result of commutations $2,330.75, or a total in cash of $3,700.70, the terminal value being $4,027.70. Upon his death, the employer contended: First, that it was not liable in any amount to his dependents because he had not died ''as a result of'' his injuries, and second, that if liable, his widow, by reason of the commutations, which were equivalent to advance payments beyond the date of the employe's death and to the end of his four hundred weeks' period, would be entitled, during the remainder of the three hundred weeks' period in which a widow is entitled to compensation under Sec. 307, to

payments only at the weekly rates which her husband would have received had he lived.

Upon the first contention, the compensation authorities determined that question of fact against the employer and found there was a causal connection between the injuries and the death of the employe; that finding is not questioned on this appeal.

In disposing of the second contention, the referee declined to take the commutations into account and made an award to the widow, for herself and minor children, at the rate of $12 per week for 121 2/7 weeks, ascertained by deducting from the three hundred weeks' period fixed for widows the 178 5/7 weeks during which her husband lived and received compensation, making her award $1,455.43. The three hundred weeks' period ended September 15, 1932, and an award was made to the children at the rate of $5 per week from that date until June 15, 1933, when the daughter would become sixteen—a period of 37 4/7 weeks—or a total of $187.86; an award was also made to the son at the rate of $3 per week from June 15, 1933, until April 11, 1935, when he would become sixteen—a period of 96 3/7 weeks—or a total of $289.29. The weekly rates to the children are not in issue. To these amounts were added items of $100 for funeral expenses and $50 for expert witness fees, making a total award to the dependents of $2,082.58.

When we add to this amount the $3,700.70, paid in cash to the employe during his lifetime, we have a total of $5,783.28, awarded against the employer and its insurance carrier, or $6,110.28 if terminal values be taken into consideration.

The injustice of this method of calculation becomes apparent when we note that the outside liability of the employer under the original award was $4,800, plus the funeral expenses and expert fees. Or, if we calculate what the injured employe would have re-

ceived in cash, if he had lived to the expiration of the four hundred weeks, by adding to the $3,700.70 paid during the first 178 2/7 weeks of that period, eighty-eight weeks at $2.35 per week, and 133 2/7 weeks at $4.35, or a total of $786.60, together with the expenses awarded, we would have a total of only $4,637.30.

It is difficult to conclude the legislature intended that an employer should be thus penalized merely because the death of an employe, to whom it had been ordered to pay commuted amounts, happened to occur before the expiration of the definite period during which he was entitled to receive compensation. The board, however, so construed the act and affirmed the award of the referee, but the court below, in an opinion by Evans, P. J., disagreed with the board, sustained the contention of the employer and directed that an award be made to the dependents upon the basis that "the period during which the dependents shall receive compensation shall be reduced by the period over which compensation was paid to the deceased in his lifetime, to wit, such proportionate part of the four hundred week period as was commuted and paid in the lifetime of the deceased claimant."

Pursuant to this direction an amended award was made in which the widow was awarded for herself and two minor children compensation at the rate of $2.35 per week from June 12, 1930, [the date upon which payments were suspended by reason of the death of the employe] to February 18, 1932, [the date of the expiration of the commutation on account of attorney's fee] a period of eighty-eight weeks amounting to $206.80, and at the rate of $4.35 per week from February 18, 1932, to September 15, 1932, [the end of the three hundred weeks' period] amounting to $130.50. An award was also made to the guardian of the son at the rate of $3 per week from August 16, 1934 [the end of the four hundred weeks' period] to April 11,

1935, [the date upon which he will become sixteen], a period of thirty-four weeks and amounting to $102. These amounts, together with the $150 for expenses, make an aggregate award of $589.30. When this amount is added to the $3,700.70, paid in cash to the employe during his lifetime, we have a total of $4,290, (or if terminal values be considered $4,607) to be compared with a total of $4,637, which would have been paid to the employe if he had lived until the end of his four hundred weeks' period.

We have not been referred to any appellate decision ruling this case, but are satisfied the court below reached the proper conclusion. Commutation is merely present payment at a reduced rate of sums sucessively payable; when the commutations ordered in this case were made that much of the liability of the employer was satisfied: Lubanski et al. v. Del. Lack. & Western R. R. Co., 81 Pa. Superior Ct. 538, 542.

Under Section 316, compensation "may at any time be commuted by the board, at its then value when discounted at five per centum interest, with annual rests, disregarding the probability of the beneficiary's death," etc. We think the significance of the phrase, "disregarding the probability of the beneficiary's death," is that the board is authorized to order commutation in a proper case, even though the effect might be to place the employer in a position where, if the employe should die during the period, the employer would have paid a larger amount than if he had paid by the weekly payments. Such result would have followed here if Shaftic had not been survived by dependents and his employer would have been without remedy.

Paragraph (f) of Section 306, provides: "Should the employe die as a result of the injury, the period during which compensation shall be payable to his dependents ......, shall be reduced by the period dur-

ing which compensation was paid to him in his lifetime.'' The construction placed upon this section by the court below, viz., that the provision—''shall be reduced by the period during which compensation was paid''—is equivalent to saying, ''shall be reduced by the period through which'' etc., has our approval.

We are satisfied, as was the court below, that none of the cases relied upon by the board supports its action and that the amended award is in harmony with the principles stated by KELLER, J., in DiLorenzo et al. v. Carnegie Steel Company, 91 Pa. Superior Ct. 64. In our opinion, the construction placed upon the applicable sections of the act by the court below is correct and we approve the following excerpt from its opinion: ''Any other construction seems to us not only unfair, unjust and inequitable, but, we find no place in the act any indication that there is to be a duplication of payments. In the present case it would indeed be strange if the payments commuted by the husband and father in his lifetime to save a home for the benefit of himself, his wife and his children, which benefit the wife and children are now receiving, must be paid over again to the wife and children as a result of the death of the husband prior to the end of the four hundred week period.''

Upon full consideration of the various aspects of this case, we are satisfied no injustice has been done the widow and children of the deceased employe, and that the construction urged by their counsel would require the employer to pay double compensation—a result which we should not countenance unless plainly compelled by the express language of the statute.

Judgment affirmed.