Gary R. BUSH, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (SWATARA COAL
COMPANY), Respondent.

Commonwealth Court of Pennsylvania.

Argued March 7, 2001.

Decided June 21, 2002.

Richard J. Wiest, Pottsville, for petition-
er.

Jonathan F. Ball, Philadelphia, for re-
spondent.

Before DOYLE, Senior Judge,[1]
COLINS, President Judge, SMITH–
RIBNER, Judge, PELLEGRINI, Judge,
FRIEDMAN, Judge, KELLEY, Senior
Judge, and LEADBETTER, Judge.

OPINION BY Senior Judge DOYLE.

Gary R. Bush (Claimant) petitions for
review of an order of the Workers' Com-
pensation Appeal Board (Board) reversing
the decision of a Workers' Compensation
Judge (WCJ), which had granted Claim-
ant's petition for commutation of benefits
pursuant to the provisions of Section 316
of the Workers' Compensation Act (Act),
Act of June 2, 1915, P.L. 736, *as amended,*
77 P.S. § 604.

An issue of first impression is presented:
whether a claimant, who is receiving total
disability benefits, may commute 360

---

1. This case was assigned to the opinion writer
prior to the date when President Judge Doyle
and Judge Kelley assumed the status of senior
judge on January 1, 2002.

weeks of future benefits into one lump sum commuted payment, **while retaining a right to collect additional future weekly benefits at the expiration of the commuted segment of 360 weeks.** We hold that he cannot.

The pertinent factual information is not in dispute. Claimant sustained serious injuries in 1976 while in the employ of Swatara Coal Company (Employer), for which he has been receiving weekly total disability benefits in the amount of $187.00 ever since. In addition to his total disability benefits, Claimant has a back-up award for the specific loss of a lower leg (350 weeks) and for facial disfigurement (10 weeks), both arising out of the same 1976 accident.

In December of 1996, Claimant filed a commutation petition seeking to obtain a lump sum payment of a portion of his total disability benefits. Claimant proposed the payment of $67,320.00 in one lump sum, which constitutes 360 weeks, or seven years, of his total disability benefits, and further proposed that he would resume his weekly benefits of $187.00 at the expiration of the seven-year commuted period. Employer opposed the petition, and a hearing was scheduled before a WCJ. Oral testimony at the hearing established that Claimant was receiving social security disability payments, augmented by similar payments to his wife on her own account and on account of their minor children, in the amount of $2,372.00 per month. Claimant also testified that he needed the funds from the commutation of his workers' compensation to pay off his home mortgage, replace the roof on his home, and install a heating plant to replace his wood burner.

On April 30, 1997, the WCJ granted the commutation petition. On appeal by Employer, the Board vacated the award and remanded the case to the WCJ for the purpose of making more specific findings on the question of whether the commutation was in the best interest of Claimant. Following an additional hearing, the WCJ issued another decision with specific findings on that issue and again approved the commutation. Employer again appealed, and the Board then reversed the WCJ's decision, holding that a commutation of a segment of total disability benefits violated the Act. The Board reasoned that a commutation must provide for the payment of **all** future benefits and end the relationship between the parties and settle all of their obligations to each other. This appeal by Claimant followed.

■ On appeal,[2] Claimant contends that the Board erred in ruling that a commutation of a portion of total disability benefits violates Section 316 of the Act, by arguing that the Act contains no such limitation, and that cases relied on by the Board are not dispositive of this issue. Employer argues, on the other hand, that implicit in the Act is the requirement that a commutation of benefits must include the **entire** future amount due, not just a portion, and that prior cases of this Court have held that such a requirement exists.

Commutations of benefits are permitted under Section 316 of the Act, 77 P.S. § 604, which provides, in pertinent part, as follows:

> The compensation contemplated by this article may at any time be commuted by the board, at its then value when discounted at five per centum interest, with annual rests, upon application of

---

**2.** Our standard of review is limited to a determination of whether there has been a violation of constitutional rights, whether an error of law has been committed, and whether all necessary findings of fact are supported by substantial evidence. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 684 A.2d 673 (Pa.Cmwlth.1996).

either party, with due notice to the other, if it appear that such commutation will be for the best interest of the employe or the dependents of the deceased employe, and that it will avoid undue expense or undue hardship to either party.... Nothing in this section shall prohibit, restrict or impair the right of the parties to enter into a compromise and release by stipulation in accord with section 449[, 77 P.S. § 1000.5, added by the Act of June 24, 1996, P.L. 350, commonly referred to as Act 57 (relating to compromise and release of an employer from liability for a claim due to a work-related injury or death)].

"Commutation" has been defined as the present payment of future benefits in one lump sum, instead of payment in periodic installments. 1 ALEXANDER F. BARBIERI, PENNSYLVANIA WORKMEN'S COMPENSATION AND OCCUPATIONAL DISEASE § 5.43 (1996). The question that remains is whether a claimant may obtain a commutation of only a **portion** of his or her **total disability** benefits pursuant to Section 316 of the Act.[3] A cursory reading of Section 316 of the Act does not specifically indicate whether such a partial commutation is permitted. It merely provides that "compensation contemplated by this article may ... be commuted...." 77 P.S. § 604. It is Employer's position that, had the General Assembly intended to allow such a right to what may be dubbed a "temporary"

partial commutation, it would have explicitly drafted such a provision. Claimant, of course, disagrees with Employer and argues that the language of Section 316 is broad enough to include such a partial commutation. Because the statute does not provide a clear-cut answer, an analysis of prior case law is necessary and will be beneficial in resolving this issue.

At the outset, we note that this Court has never specifically addressed the permissibility of partial commutation in this context. As we delve through a historical analysis of relevant case law cited to us by both parties, it is important to understand that, although we have addressed a great variety of issues relating to commutation in some manner, we have never expressly ruled on the important issue presented in this appeal.[4]

We begin our analysis with the 1932 decision of the Superior Court of Pennsylvania in *Shaftic v. Commonwealth Coal & Coke Co.*, 106 Pa.Super. 406, 161 A. 773 (1932). In *Shaftic*, the claimant was injured at work and began receiving total compensation benefits in the amount of $12.00 per week for a defined period of 400 weeks. The claimant died before the expiration of the 400-week period, leaving his widow and two minor children. During the claimant's lifetime, the Board, upon his petition, ordered commutations of **a percentage** of his weekly compensation payments.[5] Of course, when *Shaftic* was de-

---

**3.** We recognize that Section 412 of the Act, 77 P.S. § 791, permits the commutation of future benefits "where there are no more than fifty-two weeks of compensation to be commuted...."

**4.** We, therefore, believe that the statement in 1 BARBIERI, *supra*, § 5.43, that, "[u]nder Section 316, a commutation, or the present payment of future benefits in one lump sum, may be permitted in whole or in part" is overbroad, since that statement could be read to include what Employer here appropriately de-

scribes as a "temporary" partial commutation.

**5.** For example, at one point, the Board, with 311 weeks remaining on the claimant's compensation benefits, ordered $5.95 out of his $12.00 weekly benefit to be paid in one lump sum for the unexpired period for various expenses; specifically, the commutation sum of "$1,604.17, was paid to enable Shaftic to satisfy a mortgage of $1,400 upon his property, buy a cow, and pay grocery bills." *Shaf-*

cided in 1932, the Workers' Compensation Act provided that, even for total disability, a claimant was only entitled to a limited fixed period of disability benefits.[6]

The commutations in *Shaftic*, however, were never contested by the employer and were not the central issue in that case. At issue was the amount of compensation to which the widow was entitled due to the death of her husband. In holding that the widow was only entitled to the weekly rates which her husband would have received had he lived, the Superior Court stated that, "[c]ommutation is merely [the] present payment at a reduced rate of sums successively payable; when the commutations ordered in this case were made, that much of the liability of the employer was satisfied." *Id.* at 775. In essence, the Superior Court merely held that, because the employer paid a portion or percentage of the claimant's weekly benefit for 311 weeks in one lump sum, the employer was no longer liable to pay that amount to the claimant's dependents. The Court did not, however, address the propriety of the partial commutation, as that issue was not raised. In addition, *Shaftic* is also factually different from the present appeal because the partial payments in *Shaftic* represented the sum of payments that the claimant was entitled to receive for the entire benefit period (*i.e.*, 400 weeks), while the commutation requested in this case would only include seven years of an indefinite and unknown benefit period.

We next turn to this Court's more recent decision in *Green v. Workmen's Compensation Appeal Board (Roadway Express, Inc.)*, 43 Pa.Cmwlth. 143, 401 A.2d 1243 (1979), which relies on the *Shaftic* case. In *Green*, the essential issue was whether the commutation sought by the claimant was actually a commutation of benefits, or a settlement of his compensation claim. This Court concluded that "the agreement between [the claimant] and Roadway is a settlement which is contrary to the Act and which alters the amount of compensation.... Therefore, it is null and void."[7] *Id.* at 1245. Central to our holding in *Green* that the agreement between the claimant and the employer, Roadway, was a settlement rather than a commutation was our reliance on *Shaftic*. We stated the following:

> Finally, we note that had Green and Roadway intended a commutation of benefits rather than a settlement, no release would have been necessary **because once a commuted amount is paid the relationship between employer and employee is settled and all obligations are satisfied.**

*Id.* at 1246 (emphasis added) (citing *Shaftic*). Again, we did not address the permissibility of a temporary partial commutation, but, instead, embraced the proposition that central to the character of a commutation is that the relationship between the employee and the employer would be settled and **all** obligations satisfied.

---

*tic*, 161 A. at 774. The Board also ordered two more similar commutations at later dates.

**6.** Because total disability under the old Act was limited to a finite period of time, it was, in effect, equivalent in this request to partial disability under the relevant provisions of the present Act, which runs for 500 weeks. Therefore, *Shaftic* is distinguishable from the present case and not instructive with regard

to the commutation of total disability benefits where liability and entitlement are continuing.

**7.** This case was obviously decided before the passage of Act 57, which allows the parties to negotiate a compromise and release of workers' compensation claims. *See* Section 449 of the Act, 77 P.S. § 1000.5.

In *Shaffer v. Workmen's Compensation Appeal Board (Silver & Silver, Inc.)*, 138 Pa.Cmwlth. 624, 588 A.2d 1029 (1991), we dealt with the issue of whether a joint petition for commutation of future installment payments for partial disability compensation could be granted after the claimant's death, where the petition was filed prior to the claimant's death.[8] In a footnote in that opinion, relying on *Green*, we stated that, "[o]nce a petition for commutation is granted and a commuted amount is paid, the relationship between employer and employee is settled and all obligations are satisfied, **thereby precluding potential claims in the future.**" *Id.* at 1032 n. 3 (emphasis added). And, again, in *Tomlinson v. Workmen's Compensation Appeal Board (J. Baker, Inc.)*, 167 Pa. Cmwlth. 329, 648 A.2d 96 (1994), we acknowledged that *Green* stood for the proposition that a commutation award settles all obligations between the parties relating to the underlying disability. *See also Yeager v. Workmen's Compensation Appeal Board (Schneider, Inc.)*, 657 A.2d 1372, 1375 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 682, 668 A.2d 1142 (1995).

It is evident from a review of the case law that we have never before been presented with a claimant attempting to commute only a portion of his total disability benefits, while retaining a right to collect benefits indefinitely into the future at the end of the temporary, segmented commutation period. In fact, in every case cited, except *Shaftic*, the commutations included **all** of the future benefits payable to the claimant, and, in *Shaftic*, even though the claimant received a commutation of a portion of his weekly benefit, he still collected the other portion of his benefit weekly throughout the entire, limited benefit period. In our review of these decisions, it is clear that a common thread has been established: a commutation does and should settle the obligations of both parties, resulting in the preclusion of future claims. Claimant argues that this proposition, outlined in the above cases, was mere dicta and should not be followed in addressing the issue now before us. Claimant may be correct that, in the cases just reviewed, our conclusions regarding the character of the commutations were not essential to the central issues raised there; but, those conclusions, nevertheless, represented important policy considerations regarding the effects of a commutation on future compensation benefits.

■ It must first be emphasized that we have recognized that an important purpose of the Act is to provide " 'a regular form of future income . . . in installments over long periods and even for [a] lifetime in some cases.' " *Green*, 401 A.2d at 1246 (quoting 1 BARBIERI, *supra*, § 5.43). It is true that, in essence, the Act is an income maintenance program designed to provide compensation to an injured worker during his or her recovery time. As such, consistent with the standards of statutory construction, Section 316 must be narrowly construed in order to carry out the overall purpose of the Act.[9]

The General Assembly, in our estimation, intended for the commutation provision of the Act to work, under a finite set of circumstances, simply as an alternative to weekly income maintenance. These circumstances outlined in Section

---

8. We note that the commutation petition filed in *Shaffer* was for the entire partial disability period, and was not a request for only a portion of future benefits.

9. Again, we note that the Act now permits compromise and releases, but, although not explicitly stated, for all practical purposes, Section 449 deals with partial disability benefits and a finite period of time.

316 indicate a permanent change in the employee/employer relationship. For example, the provisions provide that compensation may be commuted under any one of the following circumstances: (1) if it is in the best interest of the employee and not an undue hardship to the employer, (2) if the employee is moving out of the United States, or (3) if the employer is going out of business. These conditions, we believe, indicate an intent to provide a claimant **full** compensation in situations where a continued relationship between the employee and the employer may not be desirable. We do not believe that the General Assembly envisioned that Section 316 would result in a situation where a claimant could request commutation of only **a percentage** of his or her total disability benefits, while at the same time maintaining a continuing relationship with the employer. Furthermore, we agree with Employer that, if the General Assembly intended the option of such a partial commutation, it would have explicitly drafted such a provision. Instead, it referred to "compensation" in the singular, suggesting that the **entire** total disability award may be commuted, not just a segment of it.

■ Accordingly, we hold that the Act, in certain circumstances, permits a commutation of a claimant's entire compensation award, thereby satisfying all of the obligations of the employer and severing the employee/employer relationship, but a commutation providing for only a portion or percentage of a claimant's future total disability benefits, which does not sever the liability of the employer, is not permitted under the Act. We reach our deci-

sion based on the intent of the General Assembly,[10] along with this Court's repeated pronouncements that a commutation of benefits results in a severance of the relationship between the employee and the employer and the satisfaction of all obligations.

Accordingly, the decision of the Board is affirmed.[11]

### ORDER

**NOW,** *June 21, 2002,* the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

FRIEDMAN, J., Dissenting.

I respectfully dissent. The majority "narrowly" construes section 316 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 604, to prohibit the commutation of a portion of ongoing total disability benefits. (Majority op. at 684.) For the reasons that follow, I do not accept the majority's narrow construction of section 316 of the Act.

### I. Statutory Language

It is well established that we must *liberally* construe the provisions of the Act to effectuate its humanitarian objectives, and, in doing so, we must construe borderline interpretations in favor of the injured worker. *Harper & Collins v. Workmen's Compensation Appeal Board (Brown),* 543 Pa. 484, 672 A.2d 1319 (1996). Moreover, one of the humanitarian objectives of the Act, set forth in section 316 of the Act, is

---

**10.** *See, e.g.,* Section 1922 of the Statutory Construction Act, 1 Pa.C.S. § 1922 (pertaining to presumptions in ascertaining legislative intent); *Fonner v. Shandon, Inc.,* 555 Pa. 370, 724 A.2d 903 (1999).

**11.** Because of our disposition of this case, we need not address the issues of whether the commutation would be in the best interest of claimant and not an undue hardship on Employer.

to allow for the commutation of compensation under appropriate circumstances.[1]

Section 316 of the Act states that the "compensation contemplated by this article may at any time be commuted" if commutation "will be for the best interest of the employe ... and ... will avoid undue expense or undue hardship to either party...." 77 P.S. § 604. The Pennsylvania Supreme Court pointed out years ago that this language in section 316 of the Act is "very broad." *Woodward v. Pittsburgh Engineering & Construction Company*, 293 Pa. 338, 341–42, 143 A. 21, 23 (1928). Indeed, the word "compensation" is modified *only* by the phrase "contemplated by this article," which refers to Article III of the Act. 77 P.S. § 604. It is indisputable that Article III contemplates compensation for total disability. *See* section 306(a) of the Act, 77 P.S. § 511. Therefore, based on the clear and unambiguous language in section 316 of the Act,[2] I would conclude that the statute permits the commutation of total disability benefits.

The next question is whether section 316 of the Act authorizes a commutation of a portion of ongoing total disability benefits, i.e., a commutation where the lump sum payment does not necessarily satisfy *all*

potential future obligations of the parties. I begin to address this question by pointing out that total disability benefits are "payable for the duration of total disability." 77 P.S. § 511(1). However, because, in a typical case, it is impossible to predict the duration of total disability, a commutation of the *entire* amount of total disability benefits cannot properly be accomplished. Indeed, it is impossible to determine in advance the exact amount of total disability benefits payable to a claimant because no one knows when the claimant's total disability might end. Certainly, the legislature was not unaware that, in allowing for the commutation of total disability benefits payable for the duration of total disability, such a commutation would *not* necessarily satisfy the future obligations of the parties to one another.[3]

My analysis of the issue presented here is a simple construction of the plain language of sections 306(a) and 316 of the Act. It avoids the strained analysis set forth in the majority opinion, which openly contradicts the analysis of section 316 of the Act set forth in 1 ALEXANDER F. BARBIERI, PENNSYLVANIA WORKMEN'S COMPENSATION AND OCCUPATIONAL DISEASE § 5.43 (1996).[4]

---

1. The majority states that an important purpose of the Act is to provide a regular form of future income for injured workers. (Majority op. at 683.) I agree. However, that is not a problem in the claimant's case. Here, there is a finding that the claimant receives social security disability benefits and, as a result, the claimant will be able to pay his family's monthly living expenses even *without his* workers' compensation benefits. (Findings of Fact, No. 4.) Moreover, a commutation will be approved only when *there is a specific* finding that the commutation is in the best interest of the claimant. If removing the *claimant's steady income stream is not* in the best interest of the claimant, the commutation will not be approved. *See* 77 P.S. § 604.

2. "When the words of a statute are clear and free from all ambiguity, the letter of it is not

to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).

3. Obviously, I disagree with the majority's statement that the legislature intended that "the entire total disability award may be commuted, not just a segment of it." (Majority op. at 684) (bolding in original). However, I maintain my view that "it is practically impossible to ascertain precisely the value of a ... total disability case." 1 David B. Torrey et al., Pennsylvania Workers' Compensation: Law and Practice § 5:23 (2000).

4. The majority notes that, according to 1 BARBIERI, § 5.43, a commutation under section 316 of the Act is permitted in whole or *in part*. (Majority op. at 681, n.4.)

Quite clearly, section 316 authorizes the commutation of the compensation set forth in Article III, which includes compensation for total disability. Moreover, inasmuch as total disability benefits are payable for the duration of total disability, a period of time that usually cannot be ascertained, a commutation of such benefits that does not satisfy all future obligations is unavoidable.

## II. Case Law

In construing section 316 of the Act, the majority admits its reliance on *dicta* from this court's case law, which the majority defends as "important policy." (Majority op. at 683.) This "important policy" is that a commutation of benefits must result in a "severing" of the relationship between the employee and the employer and "the satisfaction of *all* obligations." (Majority op. at 683, 684) (emphasis added). However, this court's case law clearly holds that a commutation might *not* satisfy all potential future obligations.

Generally speaking, a commutation accelerates payment of and, thus, settles the *existing* obligations of the parties to one another based on the status of the disability at the time of the commutation.[5] However, granting a commutation does not preclude a claimant from receiving additional medical or disability benefits at some future date. Within three years of a commutation, a claimant may petition to reinstate benefits pursuant to section 413(a) of the Act[6] based on an increase in disability. *See Indiana Floral Company v. Workers' Compensation Appeal Board (Brown)*, 793 A.2d 984 (Pa.Cmwlth.2002);

*Mason v. Workmen's Compensation Appeal Board (Acme Markets)*, 156 Pa. Cmwlth. 10, 625 A.2d 1271 (1992). Because there is a possibility that benefits will be reinstated following a commutation, a commutation, in some instances, may *not* satisfy all potential future obligations of the parties relating to the disability at issue.

In addition to this basic problem with the majority's policy statement, I point out that the majority derives its policy from the Pennsylvania Superior Court's decision in *Shaftic v. Commonwealth Coal & Coke Co.*, 106 Pa.Super. 406, 161 A. 773 (1932).[7] However, *Shaftic* does *not* state that a commutation results in the satisfaction of *all* obligations. In *Shaftic*, on three separate occasions, the employer commuted a *portion* of the employee's future compensation, i.e., there were three commutations, obviously none of which settled *all* obligations of the parties to one another. Subsequently, the employee died. In calculating the widow's benefits, the referee failed to give the employer credit for the commutations. The employer filed an appeal and prevailed before the superior court. In support of the employer's position, the superior court stated, "Commutation is merely present payment at a reduced rate of sums successively payable; when the commutations ordered in this case were made *that much* of the liability of the employer was satisfied."[8] *Shaftic*, 161 A. at 775 (emphasis added).

In other words, the "important policy" that the majority relies upon to *prohibit*

---

5. The existing obligations of the parties may be based on a notice of compensation payable, an agreement or an adjudication.

6. 77 P.S. § 772.

7. *See Green v. Workmen's Compensation Appeal Board*, 43 Pa.Cmwlth. 143, 401 A.2d 1243 (1979).

8. In making this statement, the superior court relied on *Lubanski v. Delaware, Lackawanna & Western Railroad Company*, 81 Pa.Super. 538, 542 (1923) (emphasis added), where the court stated, "When [a commutation is] paid . . . *so much* of the transaction was ended and the obligation satisfied."

commutations that do not satisfy *all* obligations actually *supports* such commutations. I believe that the policy, correctly stated, is that, whenever the employer pays an employee an amount owed for a work-related injury pursuant to a commutation of benefits, "that much" of the existing liability of the employer is satisfied. *Shaftic*, 161 A. at 775. Inasmuch as the majority relies on *dicta* that misstates the policy expressed in *Shaftic*, I cannot accept the majority's view on this matter.

### III. Unique Facts

Admittedly, the permissibility of a commutation like the one proposed here is an issue of first impression. However, I see no reason to prohibit such a commutation, particularly in light of the unique facts presented in this case.

Gary R. Bush (Claimant) is seeking approval to commute 360 weeks, or seven years, of total disability benefits. Claimant has received total disability benefits since 1976. After more than twenty-five years of total disability, it appears unlikely that Claimant will recover from his work-related injury. Moreover, in the event that the employer succeeds in establishing a full recovery by Claimant in a termination proceeding, Claimant is entitled to receive 350 weeks of specific loss benefits for his lower leg plus ten weeks of specific loss benefits for his facial disfigurement. In other words, because the employer would be obligated to pay Claimant 360 weeks of specific loss benefits *after* Claimant is able once again to earn his preinjury wages, Claimant is able to indemnify the employer for 360 weeks of benefits without any threat to Claimant's income stream.[9]

Because the clear and unambiguous language of section 316 of the Act permits a

9. In effect, the 360 weeks of specific loss benefits is an insurance policy for the employ-

commutation of a portion of ongoing total disability benefits, I would reverse.

er in the event that Claimant's total disability ceases.