**TOAL ASSOCIATES, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (STER-NICK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 2002.

Decided Jan. 7, 2003.

Jacqueline S. Ware, Philadelphia, for petitioner.

Albert J. Evans, Pottsville, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, COHN, Judge.

OPINION BY Judge SMITH–RIBNER.

Toal Associates (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting Respondent Jean Sternick's fatal claim petition. Respondent is the widow of John Sternick, a former employee of Employer. Employer presents three questions for review: First, did the Board err in finding that Mr. Sternick was a traveling employee when the WCJ made no finding of fact or conclusion of law on that issue. Second, did the Board err in affirming the WCJ's finding that Mr. Sternick's activities at the time of his death were reasonably incidental and consistent with his contract of employment and thus within the scope of his employment. Third, did the Board err in affirming the WCJ's determination that Mr. Sternick's work activities caused his death.

Employer is an engineering consulting firm specializing in corrosioncontrol technology, with offices located in Kennett Square, Pennsylvania. For twelve years Mr. Sternick worked there as an engineer, designing, installing and maintaining corrosion-control systems for various construction projects. Mr. Sternick was an insulin-dependent diabetic who had a history of hypoglycemic episodes. From September 1 through September 3, 1999, Mr. Sternick was scheduled to work on a pipeline project located in Queens, New York, installing a corrosion-control system for the Buckeye Pipeline Company. On Wednesday, September 1, Mr. Sternick left his home near Reading, arriving at the worksite around 6:30 a.m. Mr. Sternick worked at the site until approximately 6:00 p.m., after which he drove to a local motel and checked in at about 6:30 p.m. He did not arrive at the worksite on Thursday morning, and at 2:00 p.m. that day the motel manager and a maid found Mr. Sternick dead in the bathtub with the hot water still running. Dr. Frederick DiCarlo, a pathologist for the County of Middlesex, New Jersey, performed an autopsy, concluding that Mr. Sternick suffered an accidental death caused by hyperthermia, diabetes mellitus and focal myocardial fibrosis.

Respondent filed her fatal claim petition on April 26, 2000. Employer filed an an-

swer, averring that at the time of his death Mr. Sternick was not acting within the scope of his employment and that his death was not causally related to his work activities. Respondent presented the deposition testimony of John Lambertsen, an employee of Buckeye Pipeline, who worked with Mr. Sternick on September 1; Dr. Richard Bindie, Director of Pathology at Pottsville Hospital; and Dr. Richard Simons, Jr., Assistant Dean for Medical Education at the Milton S. Hershey Medical Center. Lambertsen testified that he had known Mr. Sternick professionally for fifteen years and therefore had come to know that he was diabetic. Lambertsen related that on the morning of September 1, Mr. Sternick did not appear to be well and that his appearance deteriorated as the day progressed. They worked from 6:30 a.m. until 6:00 p.m., taking a one-half-hour lunch break during which Mr. Sternick ate a sandwich. Lambertsen stated that much of the work involved physical labor, including drilling, digging and pulling cable.

Dr. Richard Bindie opined that Mr. Sternick died from hyperthermia caused by prolonged exposure to hot bath water, after being incapacitated by a hypoglycemic episode.[1] The doctor noted that Mr. Sternick's strenuous activities on the day of his death and the fact that he took only one, half-hour break supported his opinion that Mr. Sternick suffered a hypoglycemic episode after arriving at the motel. Dr. Bindie noted Mr. Sternick's history of hypoglycemic episodes and medical records that indicated that his erratic work schedule contributed to such episodes. Also the autopsy ruled out other causes of death, such as trauma or natural disease. Dr.

Simons concurred that Mr. Sternick's death was the result of hyperthermia ultimately caused by a hypoglycemic episode. He indicated that Mr. Sternick showed no clinical evidence of heart disease, stroke or disease of the central nervous system, and he agreed that the physical demands of Mr. Sternick's work the day of his death contributed to the hypoglycemic episode.

Employer offered the testimony of Allen Harper III, a manager for Employer; Dr. Richard Dillon, retired chief of endocrinology at Bryn Mawr Hospital; and Dr. John DiGregorio, a professor of pharmacology at Temple University. Harper testified that Mr. Sternick spent about one-third of his time each year traveling to and from worksites. When working outside of Employer's Kennett Square office, Mr. Sternik and the onsite contractors set their own work schedules, lunch hours and breaks, and when traveling Mr. Sternick was provided with a company car, a per-diem expense amount and payment for lodging. Harper said that if a worksite was one and one-half hours or more from the home office the employee was authorized to remain overnight. Harper estimated Mr. Sternick's driving time to the Buckeye Pipeline project to be two and three-quarter hours.

In Dr. Dillon's opinion, it was impossible to determine the cause of Mr. Sternick's death. Dr. Dillon noted that Mr. Sternick's ability to drive to the motel and to prepare a bath indicated that his blood-sugar level was satisfactory until that time. Furthermore, hypoglycemia is rarely reported as a cause of death and there was no measurement of Mr. Sternick's blood-sugar level after his death. Dr. Dillon

---

1. Hyperthermia is defined as "therapeutically induced hyperpyrexia," which is defined as "extremely high fever." Stedman's Medical Dictionary 854, 856 (27th ed.2000). Hypoglycemia is defined as "the collection of symptoms resulting from low blood glucose, including sweating, trembling, dizziness, confusion, anxiety, and an inability to concentrate." *Id.* at 861.

further testified that it was highly unlikely that a hypoglycemic episode occurred so rapidly that Mr. Sternick was unable to leave the bathtub, and he suggested that a sudden heart-rhythm disturbance was equally likely to have caused his death. Dr. DiGregorio opined that the most likely cause of death was a cardiac arrhythmia possibly caused by a hypoglycemic episode. He stated that Mr. Sternick's death was not work-related because nothing in the records showed that he had any problem functioning before he arrived at the motel.

The WCJ accepted the opinions of Drs. Bindie and Simons as credible and rejected the opinions of Drs. Dillon and DiGregorio. The WCJ concluded that Respondent had sustained her burden of showing that Mr. Sternick died while in the course and scope of his employment due to a hypoglycemic episode brought on by his work activities of September 1, 1999. Employer argued before the Board that at the time of death Mr. Sternick was not within the scope of his employment and that the medical evidence did not establish that his death was work-related. The Board concluded that Mr. Sternick was a "traveling employee" and that the WCJ's findings were supported by unequivocal medical evidence.[2]

■ Before this Court, Employer initially argues that the Board erred in concluding that Mr. Sternick was a traveling employee, and thus within the scope of his employment when he died. Employer stresses that it had a central office at which Mr. Sternick worked for much of each year, and the WCJ failed to make any findings of fact or conclusion of law that Mr. Sternick was a traveling employee.[3] The Court rejects these arguments. Whether an individual is a traveling employee is a question of law, decided on a case-by-case basis by examining various factors such as whether the employee has a fixed workplace, whether the employee's job duties require travel and how often the employee travels and to how many different job sites. *See Beaver & Casey, Inc. v. Workmen's Compensation Appeal Board (Soliday)*, 661 A.2d 40 (Pa.Cmwlth.1995). The fact that an employer has a central office at which an employee sometimes works is not controlling. *Id.*

■ In this case, Mr. Sternick's job site was two and three-quarter hours from Employer's office. Employer authorized Mr. Sternick's travel to the job site and his remaining overnight to complete his work. Mr. Sternick frequently made such trips on behalf of Employer, and Employer provided a company car and paid his travel expenses. These facts are sufficient to establish that Mr. Sternick worked as a traveling employee at the time of his death. Although the WCJ did not use the term "traveling employee" when finding that Mr. Sternick was within the scope of his employment at the time of death, the

2. This Court's review is limited to determining whether there has been a violation of constitutional rights, whether an error of law has been committed or whether necessary findings of fact are supported by substantial evidence. *Bush v. Workers' Compensation Appeal Board (Swatara Coal Co.)*, 802 A.2d 679 (Pa.Cmwlth.2002).

3. Respondent contends that Employer waived this issue. However, whether an employee is a traveling employee is a subsidiary issue encompassed by the more general issue of whether the employee is within the scope of

employment at the time of injury. *See, e.g., Lenzner Coach Lines v. Workmen's Compensation Appeal Board (Nymick.)*, 158 Pa.Cmwlth. 582, 632 A.2d 947 (1993). The Board's opinion specifically addressed the traveling-employee issue, and it is properly before the Court. *See Burk v. Unemployment Compensation Board of Review*, 119 Pa.Cmwlth. 360, 547 A.2d 497 (1988) (when the Board examined an issue of law that encompassed claimant's defenses, they were preserved for review).

WCJ's Conclusion of Law No. 2 states substantially the same thing: "The Claimant has sustained her burden of proving by substantial, competent and credible evidence that the Decedent was in the course and scope of his employment on September 1, 1999 when he died. The Decedent was on a trip authorized and required by the Employer and the Decedent did not do anything to take him out of the scope of employment." WCJ Decision at p. 3. The Board merely stated more precisely what the WCJ had concluded. *See Beaver & Casey*, 661 A.2d at 42 ("a fair reading of the referee's decision indicates that the referee found that Claimant was a traveling employee").

■■■■■ Employer next argues that the Board erred in affirming the WCJ's finding that Mr. Sternick was within the scope of his employment at the time of his death, because in going to a motel and taking a bath Mr. Sternick was not acting in furtherance of Employer's business. However, when a traveling employee is injured after setting out on the employer's business, it is presumed that at the time of the injury the employee was within the scope of employment, which is broader than that extended to a stationary employee. *Roman v. Workmen's Compensation Appeal Board (Department of Environmental Resources)*, 150 Pa.Cmwlth.628, 616 A.2d 128 (1992). To rebut this presumption, the employer must show that the employee's actions were so foreign to and removed from the employee's usual employment that they constituted an abandonment of

that employment. *Id.* Moreover, a traveling employee need not be engaged in work duties at the moment an injury arises to be considered within the scope of employment: "It is enough if he is occupying himself consistently with his contract of employment in a manner reasonably incidental thereto." *Lenzner Coach Lines v. Workmen's Compensation Appeal Board (Nymick)*, 158 Pa.Cmwlth.582, 587, 632 A.2d 947, 949 (1993) (quoting *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board (Stevens)*, 70 Pa.Cmwlth.163, 167, 452 A.2d 902, 904 (1982)).

Under the foregoing principles, the Court agrees that Mr. Sternick was a traveling employee still within the scope of his employment when he left the job site and checked into a local motel.[4] He had engaged in a long day of physical labor, he had to return to the job site the next morning to finish his work and his immediate needs were to bathe, eat and rest. His actions after leaving the job site were not merely for his personal comfort but were activities necessary to prepare for additional work on a project that Employer had contracted to complete by September 3, 1999. *See U.S. Airways v. Workers' Compensation Appeal Board (Dixon)*, 764 A.2d 635 (Pa.Cmwlth.2000) (so-called personal comfort doctrine applied more broadly to a traveling employee). Because Mr. Sternick's actions after leaving the job site were in furtherance of Employer's business, the Board committed no error of law in affirming the WCJ.

---

4. This case is distinguishable from *Carr v. Workmen's Compensation Appeal Board (May Department Store)*, 671 A.2d 780 (Pa.Cmwlth. 1995), relied on by Employer in arguing that the activities Mr. Sternick engaged in after leaving the job site were of a personal nature and not in furtherance of Employer's business. In *Carr* the claimant left her hotel and went sightseeing and drinking for the entire evening, after which she was injured in a car accident on the return trip to the hotel. The claimant's activities were in no way connected to her work activities that day and could not be construed as preparation for the next day's work. Those activities cannot be analogized to Mr. Sternick's activities after a day of strenuous physical labor.

Lastly, Employer argues that the WCJ and Board erred in finding that Mr. Sternick's death was work related because the medical evidence viewed in its totality does not establish a cause of death. Employer maintains that the autopsy does not state a certain cause of death, that there is no evidence that Mr. Sternick had low blood sugar when he died and that only two of the four medical witnesses could opine as to the cause of death. When conflicting medical evidence exists as to the cause of an injury, the WCJ has exclusive province over questions of credibility and evidentiary weight, and he or she is free to accept or reject the testimony of any witness, in whole or in part. *Spring Gulch Campground v. Workmen's Compensation Appeal Board (Schneebele)*, 148 Pa.Cmwlth.553, 612 A.2d 546 (1992). When both parties present medical evidence on an issue of causation, it does not matter if some evidence supports factual findings contrary to those made by the WCJ, so long as the findings are themselves supported by substantial evidence. *Locher v. Workers' Compensation Appeal Board (City of Johnstown)*, 782 A.2d 35 (Pa.Cmwlth.2001), *appeal denied*, 568 Pa. 709, 796 A.2d 987 (2002).

The WCJ's finding that Mr. Sternick's death was work related is supported by substantial evidence, and accordingly the Board made no error when it affirmed. Both Dr. Bindie and Dr. Simons testified that to a reasonable degree of medical certainty Mr. Sternick's death resulted from hyperthermia, caused by a hypoglycemic episode induced by the physical labor that Mr. Sternick engaged in on the day of his death. The WCJ credited their testimony and rejected the conflicting testimony of Dr. Dillon and Dr. DiGregorio, Employer's expert witnesses. Weighing such testimony is wholly within the WCJ's authority, and this Court is bound by the determinations made. The Court accordingly affirms the order of the Board.

### ORDER

AND NOW, this 7th day of January, 2003, the order of the Workers' Compensation Appeal Board is hereby affirmed.