Jacqueline FIELDS, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (CITY OF PHIL-
ADELPHIA), Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 2014.

Decided Nov. 14, 2014.

Daniel J. Siegel, Havertown, for peti-
tioner.

Charles J. Barreras, Eagleville, for re-
spondent.

BEFORE: BONNIE BRIGANCE
LEADBETTER, Judge, P. KEVIN
BROBSON, Judge, and JAMES
GARDNER COLINS, Senior Judge.

OPINION BY Judge LEADBETTER.

Claimant, Jacqueline Fields, petitions
for review of an order from an equally
divided Workers' Compensation Appeal
Board that affirmed, by operation of law,
the decision of the Workers' Compensation
Judge (WCJ) granting her petition to re-
view medical treatment and/or billing and
denying her petition for penalties.[1] We
consider here whether benefits for multi-
ple specific losses arising from the same
injury should be paid consecutively or con-
currently under the Workers' Compensa-
tion Act (Act).[2] In determining that such
benefits should be paid consecutively, we
affirm.

In January 2003, Claimant sus-
tained injuries to her left shoulder, arm,
wrist and hand while restraining an inmate
in the course of her employment as a
prison guard for the City of Philadelphia.
Pursuant to WCJ Bachman's December
2003 order, she received weekly total dis-
ability benefits in the amount of $450.59.
In August 2006, WCJ Slom granted Claim-

---

1. All of the Commissioners voted to affirm the
WCJ's denial of the penalty petition and
Claimant is not challenging that denial on
appeal.

2. Act of June 2, 1915, P.L. 736, *as amended,*
77 P.S. §§ 1–1041.4, 2501–2708.

ant's review petition and added a partial tear of the left rotator cuff, a left brachial plexus traction injury and reflex sympathetic dystrophy of the left upper extremity as part of her work injuries. In February 2008, WCJ Walsh granted her claim petition and awarded her 410 weeks of benefits for a specific loss of her left arm as of August 2006. She was also awarded a 20–week healing period. Accordingly, WCJ Walsh ordered that Claimant would continue to receive total indemnity benefits while she remained totally disabled and would then receive the award for the specific loss.

In June 2008, Claimant filed a review petition alleging the specific loss of her right lower extremity and/or right foot, which she subsequently amended to include the specific loss of her left leg. In September 2009, WCJ Baldys found that all of her 2003 work injuries had resolved into specific losses of her left arm and both legs. Accordingly, he granted the review petition and awarded her 410 weeks of specific loss benefits for her right leg, 410 weeks of specific loss benefits for her left leg and a 25–week healing period. He also ruled that the City was entitled to a credit for weekly temporary total disability benefits paid through the date of his decision. Subsequently, WCJ Baldys issued an amended/corrected decision therein changing the dates upon which interest was due for the various awards, but reaffirming his prior decision in all other respects.

On appeal, the Board determined that WCJ Baldys erred by awarding interest to

commence on a different date for each specific loss and modified the accrual date to October 8, 2008 for all three awards. The Board opined that it was on that date that Claimant had evidence that all of her disability injuries had resolved into specific losses and that specific loss benefits were payable after total disability benefits had ended. This Court affirmed in *Fields v. Workers' Compensation Appeal Board (City of Philadelphia)*, 49 A.3d 454 (Pa. Cmwlth.2012).

In April 2010, Claimant filed the petition to review medical treatment and/or billing at issue, alleging that she required a personal care attendant and modifications to both her home and vehicle as a result of her work-related injuries.[3] She also filed a penalty petition, alleging that the City violated the Act in February 2010 by unilaterally reducing her payments. Previously, the City, in accordance with its January 2010 planned payment schedule, had been paying Claimant specific loss benefits concurrently, in the weekly amount of $1351.77.[4] In February 2010, however, it switched her weekly benefit payments to the temporary total disability rate of $450.59 and has continued to pay her that amount.

In June 2011, WCJ Baldys concluded that Claimant met her burden in support of the review medical petition, but did not make a specific award for the costs of vehicle modification or home care services in light of her failure to submit estimates or invoices. He denied Claimant's penalty petition, concluding that the City did not

3. Claimant subsequently withdrew the request for payment for modifications to her home.

4. The City's planned payment schedule was as follows:

   *Weekly checks of $1351.77 until May 14, 2011: $450.59 (temporary total disability) × 3 = $1351.77;

*Weekly checks of $911.18, effective May 15, 2011, until November 27, 2014;
*Weekly checks of $450.59, effective November 28, 2014, until May 18, 2015;
*All specific loss benefits cease effective May 19, 2015.
WCJ Baldys' Finding of Fact No. 11; Appendix to Claimant's Brief (Claimant's Appendix) at A52–53.

violate the Act. As for the correct manner in which to pay benefits, the WCJ concluded that, with multiple specific losses arising from the same injury, Claimant could elect specific loss benefits rather than indemnity benefits for total disability but she could not receive multiple awards of specific loss benefits concurrently. In that regard, he determined that, although the City had commenced payment of all three awards concurrently, it was not required to continue to do so. Accordingly, the WCJ concluded that the City was required to pay her 1210 [5] weeks of specific loss benefits, plus a 25–week healing period, in weekly, consecutive installments. Both parties appealed.

In light of the Board's equal division, it issued a *per curiam* order affirming the WCJ. The Commissioners all agreed with the denial of the penalty petition, but disagreed with the manner in which the Act required the City to make benefit payments. The Commissioners who voted to affirm agreed with WCJ Baldys that the benefits should be paid consecutively. The remaining Commissioners also voted to affirm, but would modify the WCJ's decision to require the City to make payment of the three awards of specific loss benefits concurrently, in the manner initiated by the City following the WCJ's September 2009 decisions.

■ We are mindful that, in resolving the issue of whether benefits for multiple specific losses arising from the same injury should be paid consecutively or concurrently, one of the most important purposes of the Act is to serve as an income maintenance program. *Bush v. Workers' Comp. Appeal Bd. (Swatara Coal Co.)*, 802 A.2d 679, 683 (Pa.Cmwlth.2002). To that end,

the preferred payment schedule is "regular income installments to the injured worker over a long period...." *Christopher v. Workers' Comp. Appeal Bd. (Consolidation Coal Co.)*, 793 A.2d 991, 994 (Pa.Cmwlth.2002). Bearing in mind the legislature's general intent, we turn to the specific task of reconciling and interpreting the schedules of compensation found in Sections 306(c)(21) and (23) of the Act, which provide as follows:

(21) For the loss of, or permanent loss of the use of any two or more such members, not constituting total disability, sixty-six and two-thirds per centum of wages during the aggregate of the periods specified for each.

. . . .

(23) *Unless the board shall otherwise determine, the loss of both hands or both arms or both feet or both legs or both eyes shall constitute total disability*, to be compensated according to the provisions of clause (a) [Section 306(a) of the Act, 77 P.S. § 511, setting forth the schedule of compensation for total disability.].

77 P.S. §§ 513(c)(21) and (23) (emphasis added).

Both parties cite *Turner v. Jones & Laughlin Steel Corp.*, 479 Pa. 618, 389 A.2d 42 (1978), in support of their respective positions. In *Turner*, our Supreme Court held that a claimant having two separate losses qualifying for total disability benefits under Section 306(c)(23) had the option during his lifetime to elect to take each specific loss benefit separately instead of receiving Section 306(c)(23) total disability benefits. For Turner, rendered a complete paraplegic in a work accident,

---

**5.** The Board opined that the WCJ made a typographical error in that Claimant was awarded 410 weeks for each of the three extremities in previous decisions, which

would be a total of 1230 weeks. Commissioners' Decision in Support of Affirmance at 4 n.2; Claimant's Appendix at A77. We agree with the correction.

specific loss benefits were superior to total disability benefits because his pension would not be deducted from the payments and they would continue for the full statutory term of the award and not stop at the time of his death. *Id.* at 43–44. In advocating their differing views as to what the legislature meant in Section 306(c)(23) by including the language, "unless the board shall otherwise determine," the parties here focus on the following passage in *Turner*:

> On the contrary, [Section 306(c)(23)] explicitly gives the Board the discretion to determine the optimum benefit available to a claimant within the statutory scheme. Section 306(a)'s total disability compensation is generally the most beneficial of the benefit schedules, providing, as it does, both the highest allowable compensation and the only compensation not limited to a maximum term of weeks. The only reasonable interpretation of Section [306(c)(23)], especially in light of our duty to resolve borderline interpretations in favor of the injured employee ... is that the legislature intended by this section to provide for the highest possible compensation for a claimant who has lost both legs. In most cases this compensation is based on total disability. The legislature nevertheless empowered the Board to determine otherwise should another provision provide more advantageous to the claimant. We can conceive of no other purpose for the exception contained in Section 306(c)(23).

*Id.* at 46 (citation omitted).

Claimant asserts that *Turner* stands for the proposition that Section 306(c)(23) gives the Board discretion to determine that the best option for severely injured claimants is concurrent payment so as to ensure that he or she receives the maximum compensation possible within the statutory scheme. The City does not dispute the *Turner* Court's holding that a claimant can choose to receive specific loss benefits rather than total disability benefits, but argues that the former must be paid consecutively under Section 306(c)(21) of the Act. We agree with the City.

Contrary to her assertions, Claimant is proposing an expansion of the *Turner* Court's holding that the Board's discretion includes the authority to determine that specific loss benefits are superior to total disability benefits in certain situations. In those cases where courts have explored the parameters of the Board's discretion under Section 306(c)(23), that discretion has encompassed the discretionary power 1) to limit the presumption of total disability for bilateral losses;[6] and 2) to deter-

---

6. In pertinent part, the *Turner* Court noted that, "Section 306(a)'s total disability compensation is generally the most beneficial of the benefit schedules...." 389 A.2d at 46. In that regard, we observed that, "[t]hus, in contrast to the aggregate awards established for the loss of two or more fingers or toes, the legislature determined that the compensation for the effects of *these* bilateral losses is presumed to be total disability, *to be limited only by the WCAB*." *Allegheny Power Serv. Corp. v. Workers' Comp. Appeal Bd. (Cockroft)*, 954 A.2d 692, 700 (Pa.Cmwlth.2008) (first emphasis in original) (second emphasis added). In other words, the Board has discretion to de-termine whether claimants with bilateral losses should be considered totally disabled.

In *Symons v. National Electric Products, Inc.*, 414 Pa. 505, 200 A.2d 871 (1964), our Supreme Court held that in drafting Section 306(c)(23), the legislature conferred upon the Board the discretion to determine whether, in some circumstances, application of the statutory presumption of total disability would not be warranted. In *Symons*, the Court upheld the Board's determination that a claimant with a bilateral loss was no longer totally disabled after he returned to work and earned more than his pre-injury wages. Conversely, in *Cockroft*, this Court analyzed the Board's exercise of its discretion in a similar case and

mine that a claimant with a bilateral loss is entitled to specific loss benefits where those benefits prove to be more advantageous than total disability benefits.[7] Consistent with *Turner*, that latter type of discretion has never been construed to mean that benefits for multiple specific losses arising from the same injury be paid concurrently in order to maximize weekly benefits.[8] In this regard, it must be noted that concurrent payments would not increase the total amount of specific loss benefits paid, but would simply provide higher weekly benefits paid over a shorter period of time.

Moreover, the plain language of Section 306(c)(21) of the Act dictates that the City pay Claimant's specific loss benefits consecutively. As noted above, that schedule of compensation provides that, "[f]or the ... permanent loss of the use of any two or more such members, not constituting total disability, sixty-six and two-thirds per centum of wages during the aggregate of the periods specified for each." 77 P.S. § 513(c)(21). What has been characterized as the cardinal rule of statutory construction provides that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construc-

tion Act of 1972, 1 Pa.C.S. § 1921(b). Accordingly, this Court may not ignore the express language of the Act. *Luther P. Miller, Inc. v. Underground Storage Tank Indem. Bd.*, 965 A.2d 398, 404 n. 7 (Pa. Cmwlth.2009).

Finally, as the City suggests, what Claimant is attempting to do is akin to a back-door commutation request or, at the very least, a request to accelerate the payment of benefits. Although there is no commutation petition at issue, we note generally that such petitions are rarely granted and permitted only if they are in the best interests of the claimant or the dependents of a deceased claimant. *Christopher*, 793 A.2d at 994. In addition, consistent with the standards of statutory construction, we have held that the commutation provisions must be narrowly construed in order to carry out the overall purpose of the Act as an income maintenance program. *Bush*, 802 A.2d at 683. These basic tenets fly in the face of Claimant's assertion that concurrent payment of her specific losses would satisfy the humanitarian purposes of the Act. Instead, consistent with those purposes, the legislature requires claimants who desire accelerated payment to file petitions for commutation.[9] There is simply no basis for this

---

ultimately affirmed the Board's decision "to determine that Claimant is totally disabled, without regard to, or in spite of, his earning capacity." *Cockroft*, 954 A.2d at 703 (several judges dissenting).

7. As we noted, one of the considerations for Turner was the deduction of his pension from total disability benefit payments. In that regard, an employer is not entitled to a statutory pension offset against specific loss benefits. Section 204(a) of the Act, 77 P.S. § 71(a).

8. The multiple-injury theory does not apply because Claimant did not suffer three separate and distinct injuries in unrelated occurrences at different times. Unlike Claimant, in *Faulkner Cadillac v. Workers' Compensation*

*Appeal Board (Tinari)*, 831 A.2d 1248 (Pa. Cmwlth.2003), Tinari suffered chemical burns to both of his hands in a July 1993 work injury and a concussion in an unrelated April 1994 work injury. Consequently, where Tinari suffered entirely separate injuries in entirely unrelated circumstances, he could receive concurrent specific loss benefits for one injury and total disability benefits for an unrelated injury, without the benefits being subject to capping at the maximum compensation rate.

9. Claimant's arguments in support of concurrent payment are similar to those one would make in a commutation petition. Noting that she is entitled to receive 1230 weeks of specif-

Court to usurp the role of the legislature and create a quasi-commutation option when the legislature did not do so in Sections 306(c)(21) and (23) of the Act. The legislature provided a specific mechanism for accelerated payments and there is no authority or statutory support for the concurrent payment of benefits for multiple specific losses arising from the same injury.

As the Commissioners in support of affirmance noted, "there was no need for language regarding consecutive or concurrent payments [in Section 306(c)(23) ] because payments were to be made under Section 306(a) for total disability." Commissioners' Decision in Support of Affirmance at 10; Appendix to Claimant's Brief at A–83. Consistent with that logic, those Commissioners opined that, where, as here, a bilateral loss claimant chooses to receive specific loss benefits rather than total disability benefits, those specific loss

benefits should be paid "in the same manner as the legislature intended other multiple specific losses, such as two or more fingers or toes, which is consecutively." *Id.* We agree that, because Claimant's disabilities resulted from a single occurrence, her multiple specific losses should be aggregated pursuant to Section 306(c)(21) of the Act and paid consecutively. Accordingly, we affirm.

### ORDER

AND NOW, this 14th day of November, 2014, the order of the Workers' Compensation Appeal Board is AFFIRMED.

ic loss benefits at a weekly rate of $450.59, plus a 25–week healing period, Claimant asserts that if she receives these benefits consecutively, it will take over twenty-three years. If she receives payment of those benefits concurrently, they would end over eleven years earlier. She maintains her willingness to accept a shorter duration of specific loss benefits in order to receive benefits while her

children are dependent on her, rather than to receive a steady amount of benefits until she reaches the age of sixty-five. (She was forty-two at the time of the 2003 work injury.) Although accelerated payments are Claimant's preference, it is not at all clear whether they are in her long-range best interests or consistent with the Act's income maintenance purpose.