**Mary EVANS for Danny Evans, deceased, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (HOTWORK, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 28, 1995.

Decided Aug. 21, 1995.

James J. Conte, for petitioner.

Maureen Kowalski, for respondent.

Before SMITH and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Mary Grant Evans (Claimant) appeals from the order of the Workmen's Compensation Appeal Board (Board) affirming the order of the Workmen's Compensation Judge (WCJ), which denied her Fatal Claim Petition for herself and her children, due to the death of her husband Danny Evans. We reverse and remand.

Danny Evans died on August 7, 1990 in Emerald Isle, Carteret County, North Carolina. The cause of death was drowning near the Bogue Inlet Pier, where he was swimming with some of his co-workers. At the time of his death, he was employed by Hotwork, Inc. (Employer) as a field service technician. This job required him to spend approximately 200 days per year, "utilization days", at customer plants performing "furnace dryouts" on high-temperature furnaces. A "utilization day" was earned when the employee worked or waited at a job site for some part of the day. Travel to and from the job site was included, and the employee was paid an hourly rate, keyed to the particular type of work being performed.

Each day that an employee worked or waited at a job site, Employer was paid by the customer for a 12 hour day at the site, and the employee was given 12 hours pay or a "labor gradient", depending on the type of work performed, which was over and above his guaranteed yearly base pay. While on a job site, a technician could be either in a "wait ready" or "wait excused" status. When a technician was in the "wait ready" status, he was required to remain at the customer's plant. When he was "wait excused", he was free to do as he chose, but he was required to come in when the customer requested and could not return to his home. When an employee was not required to be on a job site, he was expected to be available at his home, "on-call", at an hour's notice.

Employer's records show that the day Mr. Evans died he was accredited with a "utilization" day of 12 hours and was on a "wait excused" status. Lawrence C. Drake, the operations manager for Employer, testified by telephone deposition that at the time of his death, Mr. Evans was the senior technician in charge of the site for Employer's customer, Nepco, in New Bern, North Carolina. Mr. Drake was asked to specifically describe Mr. Danny Evans' job and testified as follows:

A. Danny's job was to basically at our direction travel the country or wherever we directed him and perform dry-outs at those locations and wait for further instructions from me as to go home or to go to another job site.

. . . . .

Q. Now who at the time from Hotwork was supervising the activities down in New Bern?

A. Who was supervising it?

Q. Yes.

A. Danny was in charge.

Q. Specifically the Nepco site?

A. Danny was the senior technician in charge.

Q. So Danny Evans was in charge of that particular site?

A. Danny had the responsibility to contact Nepco and follow their request.

Q. Now I know you told us when questioned by Mr. Conte that Mr. Evans was on wait-excused, now can you specifically tell us how Mr. Evans would have gotten or stayed in contact with Nepco?

A. Probably the—on August the 7th, that morning, they would have called our plant contact and that—obviously that person told him that their services were not required that day and they were free to do as they chose.

Q. Now as far as your plant contact, who would that have been on August 7th?

A. I don't know. I would have to go back and check records.

Q. Would that have been someone at Nepco or would that have been someone in your office there in Kentucky?

A. That would have been someone at Nepco.

. . . . .

Q. Do you know for a fact that Danny Evans phoned in at any time other than 7:00 or 7:30 on August 7, 1990?

A. No, I do not.

(R.R. 165a–167a.)

■ The crucial question is whether Mr. Evans, who was found by both the WCJ and the Board to be a "travelling" or "roving" employee, died from injuries suffered in the course of employment, and therefore whether Claimant is entitled to death benefits for herself and her children in accordance with Section 301(c) of The Pennsylvania Workers' Compensation Act (Act).[1] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. The determination of whether an employee is in the course of his employment at the time of injury is one of law based upon the facts of the case. *Oakes v. Workmen's Compensation Appeal Board (Pennsylvania Electric Co.)*, 79 Pa.Commonwealth Ct. 454, 469 A.2d 723 (1984).

■ In general, it is the rule that injuries sustained, *either on or off the employer's premises,* while "actually engaged in the furtherance of the employer's business or affairs," are compensable injuries, arising in the course of employment. However, if the act in which the employee was engaged when injured *off the premises* was not in furtherance of the employer's business, it must appear that the employer ordered or directed the act; and merely permitting the employee to do the act without directly ordering its performance will not support an award. *Weaver v. Workmen's Compensation Appeal Board (Ribstone Silos of Pennsylvania)*, 90 Pa.Commonwealth Ct. 262, 494 A.2d 882

---

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1).

(1985). However, this rule is inapplicable to "roving employees" who basically have no work premises and no fixed work place. The definition, therefore, of "course of employment" is necessarily broader for travelling employees and is liberally construed to effectuate the purposes of the Act. *Roman v. Workmen's Compensation Appeal Board (Department of Environmental Resources)*, 150 Pa.Commonwealth Ct. 628, 616 A.2d 128 (1992).

■ When a travelling employee is injured after setting out on the business of the employer, it is presumed that he was furthering the employer's business at the time of the injury. The employer bears the burden of rebutting this presumption. *Id.* To meet this burden, the employer must prove that the claimant's actions were so foreign to and removed from his usual employment as to constitute an abandonment thereof. *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Seeley)*, 110 Pa.Commonwealth Ct. 619, 532 A.2d 1257, *appeal denied*, 519 Pa. 662, 546 A.2d 623 (1988). A travelling employee need not be engaged in the actual performance of work at the moment of an injury to be considered in the course of employment, and thus, "even an employee's recreational activities during the wait for resumption of actual duties do not break the employment relationship." *Lenzner Coach Lines v. Workmen's Compensation Appeal Board (Nymick)*, 158 Pa.Commonwealth Ct. 582, 587 n. 2, 632 A.2d 947, 949 n. 2 (1993).

Thus, this Court in *Roadway Express* found no abandonment of employment, when a travelling employee, walking back to his motel from his dinner at a restaurant/bar, was struck and killed by an automobile. The employee, a truck driver, was on a mandatory layover between trips at the time of his injury, and although he had consumed alco-

holic drinks to the point of intoxication, his death was not related to his intoxication.

The Court held that a "layover period required by the employer is not a breach in the employment relationship, which is also not breached by recreational activities during the wait for resumption of actual duties." *Roadway Express*, 110 Pa.Commonwealth Ct. at 619, 532 A.2d at 1260. The employee was found to be in the course of his employment even though his only "job duty" was to wait for his haul in the morning. The waiting was for the employer's convenience and being available to haul the employer's goods the next morning was the activity furthering the employer's business. Thus, the employee's recreational activities during his wait, walking to a restaurant and drinking in the bar, were encompassed in his scope of employment. *Id.*

Similarly, when a travelling inspector for the Department of Environmental Resources was totally disabled in a car accident which occurred when he left the job site at noon, we held that this raised the presumption that, as a travelling employee, he was within the scope of his employment, and therefore the employer must present evidence rebutting this presumption. The employer's evidence that he stayed in a motel far from the work site in order to be near his girlfriend, whom he normally met for lunch before noon, was insufficient to show an abandonment of his employment, and therefore his injuries were compensable. *Roman.*[2]

In contrast, when an employer presents evidence that the travelling employee engaged in reckless, imprudent or dangerous conduct, this Court has held that the employee has abandoned his employment and his injuries are not compensable. Thus, in *Capitol International Airways, Inc. v. Workmen's Compensation Appeal Board*, 58 Pa.Commonwealth Ct. 551, 428 A.2d 295

---

2. For other cases in which we found no break in the employment relationship of a travelling employee, see, *Schreckengost v. Workmen's Compensation Appeal Board*, 43 Pa.Commonwealth Ct. 587, 403 A.2d 165 (1979) (truck driver who left his truck overnight in front of a salt plant because the gates were closed, then went with his companions to a restaurant and bar, and was accosted and shot by a robber on the way back);

*Lenzner* (bus driver, who drove round-trip to Atlantic City and had a layover day in between driving, slipped in his shower on the layover day and injured himself); *Oakes* (electric company employee sent to deal with an emergency outage in Meadville and then engaged in some drinking in bars on the way home, while remaining on-call throughout this time, was killed in a car accident unrelated to his drinking.)

(1981), we held that an airline company carried its burden to prove that its "roving" employee, a flight engineer who died as a result of a fall from the window of a hotel, was not injured in the course of his employment and therefore was not entitled to compensation. The facts showed that during his fifteen hour layover in Spain, the engineer, dressed in civilian clothing, had a drink at the hotel furnished by the airlines, and then departed for a restaurant in the company of a friend. En route to the restaurant, the engineer addressed a woman who was window shopping and then left his friend, announcing that he intended to follow the woman. He was found outside the window of a strange hotel, while his whereabouts prior to his death were unknown.

Again, in *Stevens v. Workmen's Compensation Appeal Board (Pennsylvania Gas & Water Co.)*, 124 Pa.Commonwealth Ct. 486, 556 A.2d 522 (1989), we held that a travelling employee's actions constituted an abandonment of his employment, when the employer presented evidence that he had engaged in a fist fight in response to an obscene gesture from a stranger. The WCJ credited testimony that the employee had walked towards the stranger's vehicle, opened the door, challenged and exchanged words with the driver, and then removed his jacket just prior to the fist fight. We held that his injury was not sustained in the course his employment, and thus was not compensable.

Thus, though a roving employee need not be engaged in the actual performance of work at the time of injury, if he is occupying himself in a manner inconsistent with his contract of employment, which is *not* reasonably incidental to such employment, then he will be held to have abandoned his employment, and his injuries will not be compensable. *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board (Stevens)*, 70 Pa.Commonwealth Ct. 163, 452 A.2d 902 (1982).

In the instant case, the WCJ and the Board erred in relying on the *Weaver* case, and on the fact that Mr. Evans was not directed to be at Emerald Isle where the accident occurred. The controlling fact in *Weaver*, which distinguishes it from the present case, is that the employee was not a "roving" employee, and therefore the general rule regarding injuries *off the premises* applied. That rule states that if an ordinary, "non-roving" employee is injured off the premises, but was not actually engaged in furthering the employer's business, then it must appear that the employer ordered or directed the employee to engage in the injurious activity. In *Weaver*, the employee drowned while swimming in the Susquehanna River, an activity which occurred off the work premises. Moreover, the employee was not directed to do this act; on the contrary, the employer had, in the past, openly expressed dissatisfaction with his employees who had left the premises to take a swim in the river.

However, here, unlike in *Weaver*, both the Board and the WCJ agree that Mr. Evans was a "travelling" or "roving" employee, with no fixed work place. Therefore, the fact that Mr. Evans was not directed to go swimming off Emerald Isle is irrelevant. Moreover, they agree that on the day Mr. Evans died, his employment records reveal that he was on "wait excused" status, and he was therefore free to do as he chose. Employer did not offer any evidence to prove that Mr. Evans had failed to call NEPCO that morning to get his assignment, as required under the "wait excused" status, nor is there evidence to show that he had ignored orders to remain in a place where he would have ready access to a telephone. Although the WCJ found that neither party presented any witness with personal knowledge of the events surrounding Mr. Evans' death, (Finding of Fact No. 12), he nonetheless specifically credited the suggestion of Mr. Evans' supervisor, who stated that the most likely scenario was that he phoned into the NEPCO plant on the date of his death, only to be told that the crew was not needed that day. (Finding of Fact No. 16) Thus Employer failed to prove that Mr. Evans had in any way deviated from normal work procedure, or had occupied himself in a manner inconsistent with or foreign to his contract of employment such as to constitute an abandonment of his employment.

Unlike the situations in *Capitol International* or *Stevens,* there is also no evidence that Mr. Evans engaged in a reckless, imprudent or dangerous activity by going swimming on a day he was not needed on a work site. Surely, such employees must often swim in motel pools, and there is nothing in the record to show that the area around Emerald Isle, North Carolina, where Mr. Evans and his co-workers were swimming, was particularly dangerous. Thus, as Employer failed to show anything other than Mr. Evans was free to spend the day as he chose, and also failed to show that he was engaged in a reckless, dangerous or imprudent activity at the time of his death, Employer failed to carry its burden to show that Mr. Evans was not acting in the scope of his employment.

Accordingly, we reverse the order of the Board affirming the order of the WCJ denying Claimant's fatal claim petition and remand this case for recalculation of benefits.

### ORDER

AND NOW, this 21st day of August, 1995, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed and the case is remanded for recalculation of benefits.

Jurisdiction relinquished.