**Michael E. ANDREWS as Administrator of the Estate of Robert Andrews, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (C & C COMPOST), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 3, 1997.

Decided Oct. 31, 1997.

John J. Stanzione, Downingtown, for petitioner.

Gayle B. Frink-Johnson, King of Prussia, for respondent.

Before SMITH and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Michael Andrews (Petitioner) as administrator of the estate of Robert E. Andrews (Andrews) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the order of a Workers' Compensation Judge (WCJ) that denied a claim petition filed by Andrews against C & C Compost (Employer). Petitioner questions whether the WCJ's decision was supported by the substantial, competent and credible medical testimony of record; whether the WCJ erred in accepting Employer's medical witness' non-medical opinion that it was unknown whether Claimant's injury occurred while at work and rejecting as immaterial and irrelevant the factual testimony of Claimant's witnesses; and whether the WCJ erred in finding the testimony of Andrews to be not credible when he did not testify. Petitioner further questions whether the WCJ erred in sustaining certain objections and whether there was error in the reassignment of the case from the WCJ who received the evidence to another WCJ solely for the purpose of issuing a decision.

## I

WCJ Ollie E. Arrington, Jr., made findings that Andrews was first employed by Employer in September 1989 as a truck driver. He had a history of medical problems including hypertension, chronic alcoholism, G.I. bleeding from ruptured esophogalvarices and alcoholic encephalopathy secondary to portal hypertension. (This finding omits reference to the statement in the pertinent testimony that Andrews had been rehabilitated since 1982. Deposition of Dr. Joseph F. Kell, Jr., p. 8.) On October 24, 1989, Andrews parked his truck at the Campbell Soup facility in Reading, Pennsylvania. Approximately 30 to 45 minutes later a fellow employee found Andrews unconscious in the cab of his truck.

Dr. Richard Close, a board-certified neurological surgeon who treated Andrews at the emergency room, diagnosed an intracerebral hemorrhage, as did Dr. Joseph F. Klein, who treated him after he was transferred to another hospital. Dr. Klein stated that an intracerebral hemorrhage can be caused by a number of things, including hypertension, vascular malfunctions, bleeding disorders, aneurysms or trauma. Employer presented the medical testimony of Dr. Joseph F. Kell, Jr., a neurologist, who examined Andrews on June 3, 1991. Dr. Kell testified that there is no way of knowing if Andrews bumped his head against the cab of the truck.

The WCJ stated that the testimony of three family members and the co-worker who found Andrews was irrelevant to determining whether the injury was compensable and that their credibility therefore was immaterial. In Finding of Fact No. 8 the WCJ stated that he considered the conflicting factual and medical testimony, that the testimony of Robert Andrews was found to be not credible and was rejected in its entirety, that the opinions and conclusions of Drs. Klein and Close were based on hearsay and speculation and were less persuasive than those of Dr. Kell. The WCJ also stated that Andrews had failed to meet his burden of offering unequivocal medical testimony establishing a causal connection between his employment and his injury. In the Conclusions of Law the WCJ repeated that Andrews had failed to sustain his burden of proving that he suffered a work-related injury.

■ On appeal the Board referred to its limited appellate role and concluded that the medical evidence presented was neither insubstantial nor incompetent. Stating that it would not reweigh the evidence, the Board affirmed. The scope of this Court's review is to determine whether there were constitutional violations or errors of law and whether the necessary findings are supported by substantial evidence in the record. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

## II

Petitioner first emphasizes the fact that all three doctors testified that Andrew's intracerebral hematoma was caused by a blow to the head and that the emergency room records support this. In addition, all three doctors ruled out hypertension as the cause. Petitioner quotes Dr. Kell's answer when asked whether there was any way of determining if Andrews' injury occurred by his bumping his head against his truck: "For me, there is no—it's hearsay, and there's no way to say how his head was injured. He had an injury to his head." Deposition of Dr. Kell, p. 16. Once the fact was established that the injury was caused by trauma, Petitioner contends, the only remaining question was when the trauma occurred. The testimony of Andrews' fact witnesses was relevant to this question. In determining issues such as causation, a WCJ must look to the whole record. *Bailey v. Workmen's Compensation Appeal Board (Lawton Feed & Supply, Inc.),* 105 Pa.Cmwlth. 106, 523 A.2d 415 (1987).

Employer argues that Andrews did not present unequivocal medical testimony when Dr. Klein testified that when Andrews told him that he had bumped his head, Dr. Klein believed that, because Andrews is so tall, he might have banged his head against the roof of the truck: "But that's purely a theory. That is a possibility." Deposition of Dr. Klein, p. 32. Employer also cites the testimony of Dr. Kell stating that the very nature of Andrews' injury prevents him from being

able to explain to anyone how he sustained his injury and that anything Andrews says is of questionable value because he has so much damage to his brain.

### III

█ This Court agrees with Petitioner that, although the WCJ spoke of resolving conflicts in the medical testimony, a review of the record shows that there were no conflicts. Dr. Close, Dr. Klein and Dr. Kell all testified that Andrews' hemorrhage beneath his scalp on the back left side showed that he had suffered a blunt trauma, and all three stated that he did not suffer a hypertensive intracerebral hematoma. Further, the Case Record prepared by Dr. Kell, which Employer offered into evidence, concludes by noting that Andrews had evidence of trauma to his head when he was treated, that the CT scan and the findings of the surgeon who operated indicated that the hemorrhage was restricted to an area most commonly associated with trauma and not with strokes and that there was a lack of evidence of vascular abnormality on the arteriogram and in the clot that was removed. "In my opinion, the patient had a head injury in the left frontoparietal area which resulted in the intracerebral hemorrhage." Ex. D–3, p. 3.

Dr. Kell also testified that the history he elicited from Andrews and other information he was provided indicated that on October 24, 1989 Andrews drove a truck to New York City and then returned to Pennsylvania and stopped at the Campbell Soup warehouse to unload. "He was not sick, and his brain was working well." Deposition of Dr. Kell, p. 6. Although the WCJ was presented with this extensive, non-conflicting evidence of the mechanism and the time of Andrews' injury, he made no findings on these points.

Petitioner refers to Section 422(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834, which provides in part: "Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify the evidence and explain adequately the reasons for its rejection." Here the WCJ's failure to explain his rejection of the uncontroverted medical evidence plainly violated this provision.

█ The WCJ further failed to apply the basic principle that the course of employment is necessarily broader for a traveling employee, and it is liberally construed to effectuate the purposes of the Act. *Duquesne Truck Serv. v. Workmen's Compensation Appeal Board (McKeesport Truck Serv.),* 165 Pa.Cmwlth. 145, 644 A.2d 271, *appeal denied,* 539 Pa. 657, 651 A.2d 543 (1994). If a traveling employee is injured after setting out on the business of the employer, it is presumed that the employee was in the course of his or her employment when the injury occurred. *Id.* To meet its burden of rebutting the presumption, an employer must prove that the employee's actions were so foreign to his or her usual actions that they constituted abandonment of the employment. *Id.*

As a matter of law, the medical evidence expressly credited by the WCJ is susceptible to no interpretation other than that Andrews was injured by blunt trauma to the head that occurred while he was working. Because this trauma causing direct injury occurred while he was presumed to be engaged in activities furthering Employer's interests, and Employer never sought to rebut that presumption, the injury was related to the employment. The WCJ did not explain his conclusion that Andrews failed to meet his burden, but on this record the only conceivable legitimate reason could be the lack of a reliable account from Andrews or someone else as to exactly what occurred. This error is compounded by the WCJ's finding that Andrews' testimony was not credible when, in fact, Andrews never testified. Nonetheless, the WCJ accepted Dr. Kell's testimony that there is no way to know how the injury occurred, i.e., that Andrews is not capable of providing an account.

The Court emphatically rejects the use of this tragic circumstance to defeat Andrews' claim. When the claimant is medically unable to provide testimony, the situation is similar to that in cases involving unexplained accidents resulting in death. The Supreme Court has held: "[W]here the death is accidental it is not incumbent upon a claimant to

show the exact nature of the accident or how it occurred. *An accident, sustained in the course of employment from an unexplained cause, is compensable....*" *Zelazny v. Seneca Coal Mining Co.*, 275 Pa. 397, 400, 119 A. 487, 488 (1923) (citations omitted) (emphasis added).

Because the WCJ committed multiple errors in disposing of this case, the Board's affirmance was error, and it calls into question the thoroughness of the Board's review. Having so concluded, the Court need not address Petitioner's further arguments relating to evidentiary rulings and the reassignment of the case. The Court shall not, however, undertake the purely factual determination of the amount of compensation due; rather, the Court shall remand for this purpose. The decision of the Board is reversed, and this case is remanded for a computation of benefits.

### ORDER

AND NOW, this 31st day of October, 1997, the order of the Workers' Compensation Appeal Board is reversed, and this matter is remanded to the Board to remand to a Workers' Compensation Judge for a determination of benefits due and for the entry of an appropriate order.

Jurisdiction is relinquished.