Atlas Air, Inc., : 
                            :
             Petitioner        :
                            :
         v.                 :   No. 117 C.D. 2015
                            :
Workers' Compensation Appeal    :   Submitted: June 26, 2015
Board (O'Donnell (Deceased)),     :
                            :
            Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**               **FILED: October 21, 2015**

        Atlas Air, Inc. (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) affirming the Decision of a Workers' Compensation Judge (WCJ) that granted the Fatal Claim Petition (Petition) filed by Venice O'Donnell (Claimant), denied Employer's request for a credit against Claimant's benefit payments, and found Employer's contest unreasonable under Section 440(a) of the Workers' Compensation Act[1] (Act). On appeal, Employer argues that the Board erred because: (1) Claimant did not prove the causal relationship between Claimant's husband's, Frank O'Donnell (Decedent), death

---

[1] Act of June 2, 1915, P.L. 736, added by Section 3 of the Act of February 8, 1972, as amended, 77 P.S. § 996(a).

and his employment; (2) it is entitled to a credit under Section 204(a) of the Act;[2] and (3) its contest was not unreasonable where it raised a legitimate legal issue regarding causation. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

Decedent worked as a flight engineer for Employer for eighteen years. (WCJ Decision, Finding of Fact (FOF) ¶ 5;[3] Summary of Evidence (Summary) ¶ 3(a).) On May 5, 2011, he departed his home in West Chester, Pennsylvania on a trip for Employer that "included a flight from Afghanistan to Hong Kong." (Summary ¶ 3(b).) Decedent was in good health when he left for this trip. (Summary ¶ 3(b).) The flight crew, including Decedent, had a layover in Hong Kong beginning on May 11, 2011. (FOF ¶ 2; Summary ¶ 4(a), (b).) The captain of the flight (Captain) indicated that Decedent was in good health when they arrived in Hong Kong and checked into their hotel. (Summary ¶ 4(a).) Captain and Decedent had breakfast together that morning, during which Decedent had salmon and eggs. (Summary ¶ 4(b).) Captain noted that another pilot commented "that the 'salmon did not look good.'" (Summary ¶ 4(b).)

---

[2] 77 P.S. § 71(a).

[3] Finding of Fact 5 states that "A Summary of Evidence [(Summary)] as certified by [Claimant's counsel] . . . covering the relevant evidence[] is attached as Exhibit 'J.'" (FOF ¶ 5.) The Summary is based on, *inter alia*, statements made to and recorded by the Hong Kong police department, the hospital records of Queen Elizabeth Hospital in Hong Kong, and the medical reports of the physicians who treated Decedent in Hong Kong, which Claimant introduced as exhibits before the WCJ.

Later that day, Decedent twice vomited undigested food, after which he experienced shortness of breath and sudden onset of chest pain that was central and not radiating. (FOF ¶ 7; Summary ¶¶ 5(a), 6(a)-(c).) Decedent was admitted to the emergency department of Queen Elizabeth Hospital at 11:30 p.m. on May 11, 2011. (Summary ¶ 5(a).) The hotel contacted Captain after Decedent was taken to the hospital, and Captain went to visit Decedent less than an hour later. (Summary ¶ 4(c).) The physicians suspected Decedent was having a heart attack, but Decedent, who was conscious at that time, "'expressed to [Captain] that he had salmon eggs, he threw up twice in the evening of that date and he was very weak . . . .'" (FOF ¶ 7; Summary ¶ 4(d); Ex. C-3, R.R. at 98a.) Decedent also indicated that "'[i]t was started by food poison. I vomited several 2x at 10PM.'" (Summary ¶ 3(e), Exs. C-2, C-4, R.R. at 94a, 102a.) Captain returned to the hotel to check on Decedent's "hotel room and noted that there were towels around the toilet." (Summary ¶ 4(e).) Thereafter, Captain telephoned Claimant to advise her that Decedent was seriously ill. (Summary ¶ 3(c).)

After Decedent's condition continued to worsen, the physicians performed additional tests and discovered that Decedent "suffered a ruptured esophageal wall (Boerhaave's Syndrome)." (FOF ¶ 7; Summary ¶ 5(b).) Although the physicians performed surgery to repair the rupture, Decedent's condition continued to deteriorate. (FOF ¶ 7; Summary ¶¶ 5(b), (c), 6(b).) Claimant traveled to Hong Kong, arriving on May 13, 2011, at which time Decedent "was in a coma, intubated and unable to communicate with her." (Summary ¶ 3(c).) Decedent ultimately "developed respiratory distress[,] septic shock," and multiple organ failure. (Summary ¶¶ 5(c), 6(b).) Decedent died on May 14, 2011. (FOF ¶ 1;

3

Summary ¶ 5(c).) The Coroner's Court in Hong Kong concluded that Decedent had:

> "died of sepsis (direct cause due to) pneumonia; acute mediastinits (intervening antecedent causes[] due to); perforation of esophagus (underlying antecedent cause) and ischemic heart disease (other significant conditions contributing to the death but not related to the disease or condition causing it . . . ."

(Summary ¶ 7; Ex. C-6, R.R. at 105a.)

Claimant filed the Petition on December 2, 2011. (Petition, R.R. at 4a-6a.) Although Employer initially issued an answer denying all of the allegations set forth in the Petition and a notice of compensation denial (NCD), it eventually stipulated, in relevant part, that Decedent was in the course and scope of his employment as a flight engineer when he died.[4] (Employer's Answer to the Petition, R.R. at 7a-9a; NCD, R.R. at 180a; FOF ¶ 2.)

In support of the Petition, Claimant presented the medical records, Coroner's Report, and various statements made to the Hong Kong Police. (FOF ¶ 4.) Claimant also offered the deposition and medical report of Anthony Coletta, M.D., who is board-certified in general surgery. (FOF ¶ 4, Summary ¶ 8a.) In opposition, Employer offered the Coroner's Report, a report from the United States Consulate, which mirrored the Coroner's Report, and the NCD. (FOF ¶ 4, Summary ¶ 7.)

---

[4] The parties also stipulated that, if Claimant could recover under the Act, she would be entitled to the maximum rate applicable in 2011 and that there were no minor children that were entitled to part of the award. (FOF ¶ 3.)

Dr. Coletta reviewed the statements made to the Hong Kong Police, various affidavits, medical records from Queen Elizabeth Hospital, the physicians' medical reports, the Coroner's Report, and Decedent's medical records from his family physician. (Coletta's Report at 1, R.R. at 176a.) Dr. Coletta opined that "[e]very aspect of [Decedent's] clinical presentation . . . cannot be reasonably attributed to any cause other than esophageal perforation following forceful vomiting (Boerhaav[e's] Syndrome)" and that Decedent "died of Boerhaave's Syndrome . . . following forceful vomiting. . . ." (FOF ¶ 8 (internal quotation marks omitted); Coletta's Dep. at 16, R.R. at 122a; Coletta's Report at 2, R.R. at 177a.) Dr. Coletta remarked that "the facts in this case would suggest the cause of vomiting was secondary to food poisoning" and noted that the cause of the vomiting was not relevant to Decedent's "cause of death as it was vomiting itself that caused the esophageal perforation which lead [sic] to his death." (Coletta's Report at 2, R.R. at 177a.) The WCJ found Dr. Coletta's testimony and report credible and persuasive, noting that they are supported by the medical records and that Employer did not present any independent medical testimony to rebut Dr. Coletta's opinions. (FOF ¶¶ 8, 9.)

Employer also presented the deposition testimony of Miriam Soave, its director of benefits. (Soave's Dep. at 7, R.R. at 187a.) Employer asserted that, if Claimant prevailed, it was entitled to a credit/offset, pursuant to Section 204(a) of the Act, for the contributions it made to Decedent's 401(k) plan and for approximately $67,000 it paid Claimant to cover a shortfall in life insurance benefits under the collective bargaining agreement (CBA) between Employer and Decedent's union. Ms. Soave described, with documentation, Employer's

contributions to Decedent's 401(k) throughout his employment and the circumstances under which Employer was required to supplement the life insurance payment Claimant received following Decedent's death. (FOF ¶ 11; Soave's Dep. at 9-13, R.R. at 189a-93a.)

The WCJ found that Decedent was in the course and scope of his employment for Employer when he died and, "given the circumstances as demonstrated by the evidence and applicable law[,] his death is appropriately found related to his employment." (FOF ¶ 6.) The WCJ indicated that "[t]his may have been caused by possible food poisoning," which Dr. Coletta indicated that the history suggested, although the ultimate cause of the Boerhaave's Syndrome was the vomiting itself. (FOF ¶ 9; Coletta's Dep. at 33, R.R. at 139a; Coletta's Report at 2, R.R. at 177a.) The WCJ held that Employer presented no evidence that Decedent "had abandoned his employment, or that the circumstances surrounding [his] death . . . were so foreign to his employment so as to rebut a presumption that as a traveling employee his death is appropriately considered to be work-related." (FOF ¶ 10.) Thus, the WCJ concluded that Claimant had met her burden of proof and granted the Petition. (WCJ Decision, Conclusions of Law (COL) ¶ 1.)

The WCJ rejected Employer's request for a credit/offset, explaining that while Section 204(a) of the Act allowed a credit or offset against benefits awarded under Sections 108 or 306 of the Act, 77 P.S. §§ 27.1,[5] 511 (relating to occupational disease and indemnity benefits, respectively), Section 204(a) does not include fatal claim benefits awarded under Section 307 of the Act, 77 P.S. § 542.

---

[5] Added by Section 1 of the Act of October 17, 1972, as amended.

(FOF ¶ 11; COL ¶ 3.) Additionally, the WCJ granted Claimant's request for attorney's fees based on Employer's unreasonable contest of the Petition. The WCJ stated:

> While it may have taken some time for the [Employer] to fully appreciate all the circumstances surrounding the death of [Decedent], the evidence as finally presented by the [Employer], or more appropriately the lack of compelling evidence to defeat the claim, earmarks the contest as unreasonable. Given the professional services performed as outlined in the Quantum Merit Statement, a $6,000 fee as requested will be awarded for an unreasonable contest.

(FOF ¶ 12.)

Employer appealed to the Board, asserting that Claimant did not establish that Decedent's death arose from or was related to his job duties, its contest was reasonable, and it was entitled to a credit against Claimant's benefits because it contributed to Decedent's 401(k) plan and life insurance benefits. (Board Op. at 2, 8-9.) The Board rejected the last two arguments for the same reasons as the WCJ. (Board Op. at 8-10.) Regarding the causal connection between Decedent's death and his work, the Board held that a traveling employee is presumed to be in the course and scope of his employment when an injury occurs absent the employer establishing that the decedent's actions were so foreign to his employment that it amounted to an abandonment thereof. (Board Op. at 2.) The Board explained that:

> [w]hen the trauma causing direct injury occurred while the [decedent] is presumed to be engaged in activities furthering employer's interest, and the employer does not rebut that presumption, the injury is also presumed to be related to the employment. . . . "[W]here the death is accidental[,] it is not incumbent upon a claimant to show the exact nature of the accident or how it occurred. An accident sustained in the course of employment from an unexplained cause is compensable."

7

(Board Op. at 2 (quoting Andrews v. Workmen's Compensation Appeal Board (C & C Compost), 701 A.2d 1003, 1006-07 (Pa. Cmwlth. 1997)[6] (internal quotation marks and citations omitted)).) The Board concluded this matter was similar to Andrews, wherein the decedent was a traveling employee who died after being found unconscious in his truck with evidence of blunt trauma of unknown origin to his head, and that Andrews supported the conclusion that Decedent's death was compensable. (Board Op. at 4-6.)

The Board reasoned that the evidence showed that while Decedent was in the course of his employment he had breakfast, became very ill, which he believed was caused by food poisoning, went to the hospital, became even more ill, and passed away as a result of a medical condition that was caused by Decedent's vomiting. (Board Op. at 5-6.) The Board held that, although it was not specifically known what caused Decedent to be become violently ill, because he was in the course and scope of his employment at the time it occurred, it was presumed to be work-related. (Board Op. at 5.) The Board observed, based on Andrews, "that the lack of a reliable account from someone who knew exactly what occurred is not a sufficient basis on which to conclude that the injury is not work-related." (Board Op. at 5.) The Board concluded that, absent evidence from Employer establishing that Decedent died while acting in some fashion that was contrary to his employment or another cause for Decedent's vomiting, the

---

[6] Andrews was reversed on other grounds by this Court's decision in Daniels v. Workers' Compensation Appeal Board (Tristate Transport), 753 A.2d 293, 305 n.14 (Pa. Cmwlth. 2000). However, this Court's order in Daniels was vacated by the Supreme Court in Daniels v. Workers' Compensation Appeal Board (Tristate Transport), 828 A.2d 1043, 1054 (Pa. 2003), and the matter was remanded in order for the WCJ to articulate reasons for the WCJ's credibility determinations.

presumption stood and Decedent's death was compensable. (Board Op. at 5-6.) The Board acknowledged that, in Capitol International Airways, Inc. v. Workmen's Compensation Appeal Board (Forrest), 428 A.2d 295, 298-99 (Pa. Cmwlth. 1981), this Court found both that the decedent was not in the course of his employment and that the claimant did not prove that the death was causally related to the decedent's work duties. (Board Op. at 6.) The Board distinguished Forrest and held that it did not require reversing the grant of the Petition. (Board Op. at 7-8.) Employer now petitions this Court for review.[7]

On appeal, Employer first argues that Section 301(c)(1) of the Act, defining compensable injuries as those injuries "arising in the course of his employment and related thereto," 77 P.S. § 411(1), required Claimant to independently establish that Decedent's death arose out of and was related to his employment. Employer asserts that, when the General Assembly amended Section 301(c)(1) to remove reference to accidents, it intended the phrase "arising in the course of his employment and related thereto," id., as requiring specific proof of work-relatedness before the injury is compensable under the Act. Workmen's Compensation Appeal Board (Slaugenhaupt) v. United States Steel Corporation, 376 A.2d 271, 274 (Pa. Cmwlth. 1977). Employer maintains that the WCJ ignored these essential requirements in granting the Petition because there was no evidence that the Decedent's death was related to his employment and job duties as a flight engineer. Additionally, citing Forrest and other precedent, Employer asserts that

---

[7] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." Department of Transportation v. Workers' Compensation Appeal Board (Clippinger), 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

9

Claimant could not rely on the conceded fact that Decedent was acting in the course of employment when he died to prove the required causal connection.

Claimant, like the Board, relies upon Andrews and other traveling employee cases to argue that an injury to a traveling employee is presumed to occur while furthering the employer's business and, therefore, is work-related and compensable. Claimant asserts that an employer must rebut this presumption by presenting medical evidence showing an independent medical basis for the injury or death or evidence that the employee had abandoned his or her employment. According to Claimant, Employer did not do so here and, therefore, there was no error in granting the Petition. Claimant further observes that the majority of the cases Employer relies upon do not involve traveling employees and posits that, in relying on those cases, Employer is trying to change the longstanding case law regarding traveling and roving employees in Pennsylvania. Taken to its logical end, Claimant argues, Employer's position would mean that an injury to a traveling employee who is in layover status would not be compensable because it did not arise out of or relate to the employee's employment. Such a result, Claimant asserts, is contrary to the longstanding precedent related to traveling employees under the Act.

After reviewing the Act, the existing precedent related to traveling employees, and the parties' arguments, we are not persuaded by Employer's argument that the WCJ and Board erred in granting Claimant's Petition pursuant to Section 301(c)(1) of the Act under these circumstances. Section 301(c)(1) of the Act provides that: "[t]he terms 'injury' and 'personal injury' . . . shall be construed

to mean an injury to an employe, regardless of his previous physical condition, . . . arising in the course of his employment and related thereto . . . ." 77 P.S. § 411(1). "The term 'injury arising in the course of his employment' . . . shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere . . . ." Id. As with all workers' compensation matters, these phrases must be given a liberal construction to effectuate the humanitarian objective of the Act. Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe), 652 A.2d 797, 799 (Pa. 1995).

Employer conceded that Decedent was in the course of his employment when he died and there are presumptions associated with a traveling employee who is acting in the course of his or her employment. The course of employment of a traveling worker is broader than that of an ordinary employee. Forrest, 428 A.2d at 297. If a traveling employee is fatally injured "after setting out on the business of the employer, it is presumed that he was *furthering the employer's business at the time of [his death]*." Evans v. Workmen's Compensation Appeal Board (Hotwork, Inc.), 664 A.2d 216, 219 (Pa. Cmwlth. 1995) (emphasis added). To rebut that presumption, an employer must prove "that the employee's actions were so foreign to and removed from his [or her] usual employment that they constitute an abandonment of that employment." Duquesne Truck Service v. Workmen's Compensation Appeal Board (McKeesport Truck Service), 644 A.2d 271, 276 (Pa. Cmwlth. 1994).

11

It is well-settled that, for a traveling employee, "[i]t is enough if he is occupying himself consistently with his contract of employment in a manner reasonably incidental thereto." Toal Associates v. Workers' Compensation Appeal Board (Sternick), 814 A.2d 837, 842 (Pa. Cmwlth. 2003) (quoting Lenzner Coach Lines v. Workmen's Compensation Appeal Board (Nymick), 632 A.2d 947, 949 (Pa. Cmwlth. 1993) (internal quotation marks and citation omitted)). Moreover, a traveling employee's required layover period, by itself, does not breach the employment relationship. Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Seeley), 532 A.2d 1257, 1260 (Pa. Cmwlth. 1987). Thus, injuries to or deaths of traveling employees occurring while engaging in, *inter alia*, recreational activities or activities that served the employees' personal comfort during a layover or on an off-day are in the course of their employment and may be compensable. See, e.g., Toal Associates, 814 A.2d at 842 (holding that fatal claim benefits were appropriate where the decedent was found dead in the bathtub of a hotel provided by the employer following a long day at work); Evans, 664 A.2d at 220-21 (affirming the award of fatal claim benefits where the decedent, who was out of town on a job, drowned while on a swimming excursion during an off-day); Lenzner Coach Lines, 632 A.2d at 950 (holding that the claimant's injuries sustained after falling in a hotel shower during a layover period were compensable); Roman v. Workmen's Compensation Appeal Board (Department of Environmental Resources), 616 A.2d 128, 131 (Pa. Cmwlth. 1992) (holding that injury sustained to a traveling worker shortly after leaving a job site on his lunch break was compensable); Seeley, 532 A.2d at 1260 (concluding that fatal claim benefits were proper where the decedent, an over-the-road truck driver, was killed crossing the road after eating dinner while on a layover).

12

Employer argues that these cases are inapplicable to determining whether causation exists because they were all "course and scope" cases and, here, it conceded that Decedent was in the course of his employment. Employer is correct that the presumptions given to traveling employees who are acting, by the nature of their traveling status, in the course of their employment do not alter the requirement under Section 301(c)(1) that a causal connection must exist between the injury and the work. However, what is altered by these presumptions is which party has the burden of proving causation or the lack thereof between an injury or death and the employee's work.

In <u>Andrews</u>, a truck driver, who was a traveling employee, was found unconscious in his truck with evidence of blunt trauma to his head; he suffered an intracerebral hematoma, and a claim petition was filed. <u>Andrews</u>, 701 A.2d at 1005. There was no indication of exactly how the head trauma occurred and, because of the injury, the employee could not testify as to exactly how it occurred. <u>Id.</u> at 1005-06. The employee later died and his estate was substituted on the claim petition. <u>Id.</u> at 1004-05. After a hearing at which the parties' physicians agreed that trauma to the employee's head occurred, but not to exactly how the trauma happened, the WCJ found, *inter alia*, that the employee had not met "his burden of offering unequivocal medical testimony establishing a causal connection between his employment and his injury," seeming to focus on the fact that no one knew exactly how the trauma occurred. <u>Id.</u> at 1005. The Board affirmed.

On appeal, this Court reversed. We held that the WCJ erred in not applying the broad presumption based on a traveling employee's course of employment and

13

that, because the employee had set out on business for the employer when the trauma occurred, he was presumed to be in the course of his employment and furthering the employer's interests. Id. at 1006. We further concluded that "[b]ecause this trauma causing direct injury occurred while he *was presumed to be engaged in activities furthering [the e]mployer's interests*, and [the e]mployer never sought to rebut that presumption, *the injury was related to the employment*" and compensable. Id. (emphasis added). This Court explained that it:

> emphatically reject[ed] the use of this tragic circumstance to defeat [the] claim. When the claimant is medically unable to provide testimony, the situation is similar to that in cases involving unexplained accidents resulting in death . . . . [, and, in those cases,] it is not incumbent upon a claimant to show the exact nature of the accident or how it occurred [because *a]n* [injury or death] *sustained in the course of employment from an unexplained cause, is compensable*.

Id. at 1006-07 (internal quotation marks and citation omitted).

Andrews is instructive because it explains that, where a traveling employee is acting in the course of his employment, the employee *is presumed to be furthering the employer's interests* and an injury occurring while the employee is furthering the employer's interest is related to the employee's work *absent rebuttal evidence* from an employer. This presumption establishes, in the first instance, the causal connection between the traveling employee's injury or death and the employee's work as required by Section 301(c)(1).[8] To defeat a claim for benefits,

---

[8] This is similar to the presumption that an injury sustained by an employee while on an employer's premises arises in the course of the employment and is work-related, and that it is the employer who must rebut the presumption to defeat a workers' compensation claim. See David B. Torrey & Andrew E. Greenberg, Workers' Compensation Law and Practice § 4.51 (3d ed. 2008) (discussing the burdens of proof and presumptions associated with, *inter alia*, traveling

*(Continued…)*

14

employers must present evidence to rebut this presumption, which is what occurred in Forrest.

In Forrest, the decedent was a flight engineer on a layover in Spain when he died as the result of a fall from the window of a hotel, which was not the hotel where the employer had provided lodging for the decedent. Forrest, 428 A.2d at 298. The decedent, while dressed in civilian clothing, was on his way to dinner with a colleague when he left his colleague to follow an unknown woman. Id. The decedent had no further contact with his colleague or the employer, and he was later found dead outside a hotel different from where he was staying. Id. We held that, because the decedent's activities and whereabouts neither promoted nor concerned the employer's business or his work as a flight engineer, the decedent "was not actually engaged in furthering his employer's business and was not in the course of his employment." Id. Thus, it was not compensable. This Court, nonetheless, also "consider[ed] very briefly whether [the decedent's] death was work-related," and concluded that "there [was] no evidence on the record to establish that [the decedent's] death was causally connected to the course of his employment," stating that "even if [the decedent] had died in the course of his employment, his death would not be compensable because it was not work-related." Id. at 298-99.

We conclude that this matter is more like Andrews than Forrest. As in Andrews, Decedent was a traveling employee who had set out on Employer's

employees who are injured after having set out on the business of their employer and employees injured while on their employers' premises).

15

business when he became ill. Decedent's illness occurred while waiting for the next leg of his trip for Employer and after eating breakfast at the hotel Employer designated for its employees' use. Decedent was in the course of his employment and was furthering Employer's interests at the time he ate breakfast and, as a result, became ill, vomited, and ruptured his esophagus. For these reasons, Claimant was entitled to the presumption that Decedent's death occurred in the course of his employment and while furthering Employer's interest and, therefore, was work-related. The burden then shifted to Employer to rebut the presumption and demonstrate that Decedent's illness and resulting death were not work-related.

As discussed, the employer in Forrest successfully rebutted the presumptions associated with a traveling employee by establishing that, at the time of his death, the employee was acting contrary to his employment when he followed an unknown woman to an unauthorized hotel. Forrest, 428 A.2d at 298-99. Similarly, in D'Alesandro v. Workers' Compensation Appeal Board (The Boeing Company) (Pa. Cmwlth., No. 87 C.D. 2009, filed July 1, 2009), slip op. at 7,[9] we affirmed a determination that the decedent's fatal heart attack while he was traveling for the employer was not work-related and not compensable. In D'Alesandro, the employer presented expert testimony challenging the causal connection, which was credited, opining that the decedent's fatal heart attack was not work-related, but was random and a result of his long history of heart disease. Id. In contrast, in Toal Associates, the decedent died in a bathtub at a hotel provided by the employer of hyperthermia resulting from hypoglycemia following a long day of physical work at the employer's work site. Toal Associates, 814

_____

[9] Both Employer and Claimant cite D'Alesandro as persuasive authority.

16

A.2d at 839. The claimant presented evidence describing the decedent's work activities and the cause of the decedent's death, and the employer presented the testimony of its medical expert indicating causes that were unrelated to the decedent's employment, which the WCJ did not credit. Id. at 840-41. We affirmed the award of benefits based on the credited evidence that the decedent was within the course of his employment and his bath was not merely for his personal comfort, but to prepare for his next day of work, and that the hyperthermia and hypoglycemia were work-related. Id. at 842-43.

Unlike in Forrest, in this case Employer did not present credited evidence or argument that Decedent was acting in any way contrary to his employment when he became ill, vomited, and ruptured his esophagus, or otherwise challenged that Decedent was furthering Employer's interests when he became ill during a layover at the hotel Employer had provided after eating a breakfast that the hotel provided. Nor did Employer present credited evidence, like the Employer in D'Alesandro, that Decedent was medically susceptible to Boerhaave's Syndrome. Dr. Coletta indicated that "the facts in this case would suggest the cause of vomiting was secondary to food poisoning," but opined that the actual reason for Decedent's vomiting was not relevant to the cause of death because it was the vomiting itself that caused Decedent's esophagus to perforate. (Coletta's Report at 2, R.R. at 177a.) Employer relies on this statement to argue that there was no causal connection between Decedent's work and his death. However, while the cause of Decedent's vomiting may have been *medically* irrelevant to his development of Boerhaave's Syndrome and his death, the cause of the vomiting could be *legally* relevant to a determination of whether Decedent was furthering Employer's

17

interest when he became ill. For example, had Employer presented credited evidence that Decedent had become ill due to a night of too much drinking or the flu, Employer may have met its burden of showing Decedent's illness was not work-related. Employer did not do so and, therefore, did not rebut the presumption that Decedent's illness and death were work-related. Accordingly, we discern no error in granting the Petition.

Employer also asserts that it is entitled to a credit under Section 204(a) for its contributions to Decedent's 401(k) plan and for the monies it paid Claimant to satisfy its obligation under the CBA to obtain a life insurance policy for Decedent payable in the amount of $100,000. Employer maintains that it should be entitled to a credit under Section 204(a) of the Act because it contributed to Decedent's 401(k) plan and paid, essentially, half of Decedent's life insurance benefits.

Section 204(a) of the Act provides as follows:

(a) No agreement, composition or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three thereof: and any release executed in consideration of such benefits shall be void; Provided, however, That if the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c)[, 77 P.S. § 513 (relating to specific loss benefits)] or 307 [(relating to death benefits)]. Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 et seq.) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under

18

section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. The severance benefits paid by the employer directly liable for the payment of compensation and *the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306*, except for benefits payable under *section 306(c)*. The employe shall provide the insurer with proper authorization to secure the amount which the employe is receiving under the Social Security Act.

77 P.S. § 71(a) (emphasis added). The regulation at 34 Pa. Code § 123.4(a)(1) provides that "[t]he offset applies only to wage-loss benefits (as opposed to medical benefits, specific loss or survivor benefits)." The regulation at 34 Pa. Code § 123.1 notes that "[o]ffsets in excess of the weekly workers' compensation rate shall accumulate as a credit toward future payment of workers' compensation benefits."

In Allegheny Ludlum Corporation v. Workers' Compensation Appeal Board (Carney), 928 A.2d 1138, 1140 (Pa. Cmwlth. 2007), this Court rejected an employer's argument that it was entitled to an offset against a widow's death benefits paid under Section 307 for the pension benefits, which were fully funded by the employer, it paid to the widow on the decedent's behalf. We held that no offset was permitted under the Act because Section 204(a) allows an offset against benefits paid under Sections 108 and 306 (except Section 306(c)), but makes no mention of fatal claim benefits awarded under Section 307. See also Frank Bryan, Inc. v. Workers' Compensation Appeal Board (Bryan, Deceased), 921 A.2d 546, 549-50 (Pa. Cmwlth. 2007) (internal quotation marks omitted) (holding that no social security offset could be taken against fatal claim benefits paid under Section

19

307 because although Section 204(a) "plainly provides that social security old age benefits shall be credited against the amount of payments made under Sections 108 . . . and 306. . . , except for benefits payable under Section 306(c)," "[t]here is absolutely no mention of fatal claim benefits received pursuant to Section 307 . . . in Section 204(a) of the Act").

Employer asserts Allegheny Ludlum is inapposite because that case involved the denial of an offset for *pension* benefits, not 401(k) benefits, and that there is nothing to support the claim that the 401(k) plan here is a pension plan. We are puzzled by Employer's argument in this regard because of Employer's assertions that it "presented the unrebutted testimony of [Ms.] Soave which established its entitlement to a credit for the Employer-funded *pension* and life insurance benefits" and that it "is entitled to a credit for contributions it makes to an employee's *pension*." (Employer's Br. at 49-50 (emphasis added).) It is apparent from Employer's arguments before the WCJ, the Board, and this Court that it believes that it is entitled to a credit based on its contributions to Decedent's 401(k) plan under the pension provisions of Section 204(a) of the Act. Thus, we conclude that Allegheny Ludlum is not distinguishable. Moreover, we note that the plain language of Section 204(a) does not otherwise support a credit to Employer for its contributions to the 401(k) plan because that section does not separately mention a credit or offset against benefits based on such contributions.[10]

---

[10] Employer also asserts that, pursuant to Jones v. Workers' Compensation Appeal Board (City of Chester), 961 A.2d 904 (Pa. Cmwlth. 2008), the WCJ could have issued Employer a credit for the benefits paid to Claimant pursuant to the CBA, including pension and other benefits. However, Jones did not involve fatal claim benefits awarded under Section 307 and, therefore, Employer's reliance thereon is misplaced. Moreover, even if a credit was permitted against benefits awarded under Section 307, Section 204(a) does not specifically authorize a

*(Continued…)*

20

Employer also challenges the award of unreasonable contest attorney's fees under these circumstances. Employer asserts that it has maintained a legitimate legal argument based, *inter alia*, on Forrest that Claimant did not prove the causal connection between Decedent's work and his death and, therefore, there was a genuinely disputed issue for the WCJ to resolve. Employer further notes that it also presented additional factual evidence, namely the Coroner's Report indicating that Decedent died of, *inter alia*, sepsis and Boerhaave's Syndrome, conditions that were unrelated to his position as a flight engineer.

Section 440(a) of the Act, 77 P.S. § 996, provides that where a claimant prevails, in whole or in part, and benefits are awarded, "a reasonable sum of costs incurred for attorney's fee[s]" will also be awarded unless the employer presents "a reasonable basis for the contest." "Whether an employer's contest is reasonable is a question of law fully reviewable on appeal." Thompson v. Workers' Compensation Appeal Board (Cinema Center), 981 A.2d 968, 973 (Pa. Cmwlth. 2009). Employer bears the burden of proving that its contest was reasonable. City of Philadelphia v. Workers' Compensation Appeal Board (Calderazzo), 968 A.2d 841, 852 (Pa. Cmwlth. 2009). If the employer establishes that its contest was prompted to resolve a genuinely disputed issue and not to harass the employee, then its contest is reasonable. Nortim, Inc. v. Workmen's Compensation Appeal Board (Rolick), 615 A.2d 873, 877 (Pa. Cmwlth. 1992).

---

credit for Employer's payment to Claimant to satisfy its contractual obligation to provide a life insurance policy in a certain amount to Decedent. Section 204(a) addresses credits or offsets for unemployment compensation benefits, Social Security "old age" benefits, and pension plans to the extent funded by an employer; there is no mention of the type of payments Employer made here as required by the CBA. 77 P.S. § 71(a).

21

A review of this matter reveals that Employer's contest of the Petition was reasonable in part and unreasonable in part. Given this Court's decisions in Forrest, D'Alesandro, and others, it was not unreasonable for Employer to challenge the Petition by asserting that Decedent's death was not causally-related to his employment as a flight engineer. However, Employer's attempt to obtain a credit under Section 204(a) was unreasonable. As discussed above and observed in Frank Bryan, Inc., in which we upheld an award of attorney's fees under Section 440(a), there is nothing in Section 204(a) that permits employers to take a credit or offset against benefits awarded under Section 307, and the Board's own regulations expressly indicate that offsets are available only against wage-loss benefits, 34 Pa. Code § 123.4(a)(1). Frank Bryan, Inc., 921 A.2d at 551. Therefore, we vacate that portion of the Board's Order affirming the WCJ's award of unreasonable contest attorney's fees and remand the matter for a determination as to what amount of Claimant's attorney's fees were incurred in defending Employer's credit request.

Accordingly, the Board's Order is affirmed to the extent that it granted the Petition and denied Employer's request for a credit under Section 204(a), is vacated to the extent that it awarded Claimant attorney's fees pursuant to Section 440(a), and this matter is remanded for further proceedings in accordance with this opinion.

_____
**RENÉE COHN JUBELIRER, Judge**

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Atlas Air, Inc.,                          :
                                          :
                    Petitioner            :
                                          :
        v.                                :    No. 117 C.D. 2015
                                          :
Workers' Compensation Appeal              :
Board (O'Donnell (Deceased)),             :
                                          :
                    Respondent            :

# O R D E R

**NOW**, October 21, 2015, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED** to the extent that it granted the Fatal Claim Petition of Venice O'Donnell (Claimant) and denied Atlas Air, Inc.'s request for a credit under Section 204(a) of the Workers' Compensation Act (Act), 77 P.S. § 71(a), is **VACATED** to the extent that it awarded Claimant attorney's fees pursuant to Section 440(a) of the Act, 77 P.S. § 996(a), and this matter is **REMANDED** for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER, Judge**